**Anis Shokri Salama MALTY,**
**Petitioner,**

v.

**John ASHCROFT, Attorney**
**General, Respondent.**

No. 03–70069.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 2, 2004.*

Filed Aug. 27, 2004.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

944

Judith Seeds Miller, Van Nuys, CA, for the petitioner.

Peter D. Keisler, M. Jocelyn Lopez Wright, and Elisabeth Layton, Washington, D.C., for the respondent.

Before REINHARDT, NOONAN, and CLIFTON, Circuit Judges.

REINHARDT, Circuit Judge:

Anis Shokri Salama Malty ("Malty"), a native and citizen of Egypt and a Coptic Christian, appeals from the Board of Immigration Appeals' ("BIA") denial of his motion to reopen his asylum and withholding of deportation proceedings on the basis of changed circumstances in Egypt. We conclude that the BIA erred in determining that Malty has not established changed country circumstances sufficient to reopen his case pursuant to 8 C.F.R. § 3.2(c)(2) (now codified at 8 C.F.R. § 1003.2(c)(2)).

## I. Factual and Procedural Background

Malty filed an application for asylum and withholding of removal in March of 1992. In his asylum hearing, which was held in 1997, Malty testified that in high school and college he was taunted by Islamic classmates and teachers because of his Christianity. He finished college from home in order to avoid the persistent harassment, but was subsequently unable to obtain employment as an accountant because of religious discrimination. Malty also testified that he and his family received menacing telephone calls from Islamic militants.

An immigration judge denied Malty's petition in July of 1997. The IJ acknowledged that Malty had "difficulties" in Egypt but found that his experiences did not rise to the level of persecution. On February 23, 1999, the BIA denied Malty's appeal and on August 1, 2000, it denied a motion to reopen to apply for suspension of deportation. Malty promptly sought relief in this court. On October 12, 2001, we upheld both agency decisions. The mandate issued on December 4, 2001.

Less than two weeks later, on December 17, 2001, Malty filed a motion to reopen on the basis of changed circumstances in Egypt that had arisen during the four plus years following the IJ's decision. He submitted new evidence detailing rising levels of violence against Egyptian Coptic Christians generally and specific acts of violence against his family in particular. According to Malty, members of his family, including his father, had suffered a series of brutal attacks on account of their religion, all of which occurred after Malty's asylum hearing, and his father had been warned of consequences Malty would face if he returned.

On December 12, 2002, the BIA denied Malty's motion to reopen. According to the BIA, the motion to reopen was "both untimely and number-barred ... and was not within an exception to the time and number limitations." Furthermore, the BIA concluded that Malty had not demonstrated changed circumstances in Egypt.

Rather, he had described a "continuance of the circumstances that gave rise to his first claim." The BIA found that much of the submitted country information predated Malty's prior motion to reopen, which was based on his alleged acquisition of seven years of continuous presence in the United States. Accordingly, the BIA concluded that the new information did not constitute new evidence for the purposes of the pending motion to reopen. Finally, the BIA faulted Malty for failing to submit supporting affidavits.

■ We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1222 (9th Cir.2002); *Salta v. INS,* 314 F.3d 1076, 1078 (9th Cir.2002).[1]

## II. Analysis

### A. *Time and Numerical Limitations*

Ordinarily, a petitioner seeking to reopen his deportation proceedings must file a motion within ninety days of the date upon which the final administrative decision was rendered and may file only one motion to reopen. 8 C.F.R. § 1003.2(c)(2). However, the time and numerical limitations are inapplicable in certain circumstances. One such exception is for "motions filed for the purpose of applying or reapplying 'for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered.'" *Azanor v. Ashcroft,* 364 F.3d 1013, 1021–22 (9th Cir.2004) (quoting 8 C.F.R. § 3.2(c)(3)(ii)).

■ Because Malty filed his motion to reopen on the basis of changed circumstances arising in Egypt and because, as discussed below, we conclude that his evidence is "material and was not available and could not have been discovered at the previous hearing," 8 C.F.R. § 1003.2(c)(3)(ii), we hold that the BIA abused its discretion in ruling that the motion was untimely and numerically barred.

### B. *Changed Circumstances*

■ According to the BIA, Malty's evidence was insufficient to demonstrate changed circumstances because it described "a continuance of the circumstances that gave rise to his first claim." This reasoning makes little sense. A petitioner's evidence regarding changed circumstances will almost always relate to his initial claim; nothing in the statute or regulations requires otherwise. The critical question is not whether the allegations bear some connection to a prior application, but rather whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution. In this case, Malty still alleges persecution of Coptic Christians on account of religion. However, the new evidence is qualitatively different from the evidence presented at his asylum hearing.

At his asylum hearing, Malty described only incidents of harassment and discrimination. In his motion to reopen based on changed circumstances, Malty presented new, previously unavailable evidence indi-

---

**1.** The BIA declined to exercise its discretionary authority to grant the motion *sua sponte.* We do "not have jurisdiction to review the BIA's refusal to reopen deportation proceedings *sua sponte.*" *Ekimian v. INS,* 303 F.3d 1153, 1160 (9th Cir.2002). Although the BIA discusses some of its reasons for its decision not to reopen when explaining its refusal to grant a *sua sponte* motion, we treat all of its reasons as equally pertinent to its denial of *Malty's* motion to reopen, which it denied essentially on the ground that he failed to demonstrate changed country circumstances.

cating that the harassment had increased to the level of persecution, both with respect to Coptic Christians generally and with respect to Malty's family specifically.

First, Malty submitted the "Freedom House Report," which was published in June 1999 by the Center for Religious Freedom. The Report describes "mass arrests and torture" of approximately 1,000 Egyptian Coptic Christians, murders of numerous Coptic Christians on account of religion, and the arrest of the Secretary–General of the Egyptian Organization for Human Rights, all of which took place in 1998. It also details the growth of *jizya*, "a tax that Christians pay to be defended from Muslims," and violent attacks against Christians who refuse to pay, beginning in 1997.

Second, Malty submitted a declaration detailing six separate incidents of persecution of his family members in Egypt—all of which occurred subsequent to his asylum hearing. In December 1998, Malty's brother was arrested, interrogated, and beaten; he was "burnt with cigarettes and received electrical shocks by the interrogating officers." In July 1999, Malty's father was attacked by Islamic militants and his business was destroyed. Malty's brother went to the police to report the incident, but they refused to investigate and told him that "what the attackers did was justified by Islam." In January 2000, Malty's brother was beaten by three men in "Islamic clothes," his car was badly damaged, and they "shouted that they were going to kill all infidels like him." Again the police refused to investigate the attack. In June 2000, Malty's father was threatened by people who knew that Malty was in the United States applying for religious asylum; he was told that if Malty were to return to Egypt he would be arrested and prosecuted. In January 2001, on the Coptic Christmas Eve, the family's apartment was ransacked by Islamic militants. Finally, in May 2001 Malty's father was attacked for failing to pay *jizya*.

Thus, the events detailed in the Freedom House Report and in Malty's declaration are qualitatively different from the discrimination and harassment to which Malty testified in his asylum hearing. The BIA abused its discretion in dismissing the new evidence as demonstrating a mere continuance of the previous circumstances.

█ The BIA also erred in denying the motion on the ground that "much of the country information predates the respondent's first *motion*." (emphasis added). The relevant question is not whether Malty's new information predates his first motion—a motion for suspension of deportation that had nothing to do with changed circumstances—but rather whether the new information was unavailable or undiscoverable at the "previous *hearing*," in this case the asylum hearing. 8 C.F.R. § 1003.2(c)(3)(ii) (emphasis added). Notably, the regulations do not bar a petitioner from raising the argument of changed country conditions in a second motion if he failed to raise them in a first motion; in fact, as discussed above, changed country conditions are specifically excepted from the numerical limitations on motions. 8 C.F.R. § 1003.2(c)(1).

█ Finally, the BIA abused its discretion when it faulted Malty for not submitting supporting affidavits. Along with the published Freedom House Report, Malty provided his own sworn declaration. Contrary to the BIA ruling, a motion to reopen on the basis of changed circumstances need not be supported by additional affidavits. A motion to reopen "shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1); *see*

*also* 8 U.S.C. § 1229a(c)(6)(b).[2] This court has "recognize[d] the serious difficulty with which asylum applicants are faced in their attempts to prove persecution, and has adjusted the evidentiary requirements accordingly." *Cordon–Garcia v. INS*, 204 F.3d 985, 993 (9th Cir.2000) (citation omitted). Specifically, we have recognized that "corroborating affidavits from relatives or acquaintances living outside of the United States ... [are] almost never easily available." *Sidhu v. INS*, 220 F.3d 1085, 1091–92 (9th Cir.2000); *see also Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996). Just as credible testimony from the petitioner, without supporting affidavits or declarations, establishes eligibility for relief during an asylum hearing, *see Ladha v. INS*, 215 F.3d 889, 899–901 (9th Cir.2000) (collecting cases), a sworn statement from the movant may be sufficient to meet the evidentiary burden in the motion to reopen context.[3] The BIA erred in holding that Malty's declaration along with the Freedom House Report was insufficient to warrant reopening. *Cf. Cordon–Garcia*, 204 F.3d at 992 ("[T]his court does not require corroborative evidence....").

### C. *Well-founded Fear*

■■■ Because the facts alleged in Malty's declaration and presented in the Freedom House Report are not inherently un-believable, we must take them as true. *See Limsico v. INS*, 951 F.2d 210, 213 (9th Cir.1991).[4] In light of this evidence, we hold that Malty has a "reasonable likelihood" of meeting the statutory requirements for demonstrating a well-founded fear of persecution on account of religion. *See Ordonez v. INS*, 345 F.3d 777, 785–86 (9th Cir.2003) (petitioner need not demonstrate conclusively his eligibility for relief in order to prevail in a motion to reopen). In fact, it appears that, on the basis of the record before us, unless after a hearing Malty's testimony were deemed to be not credible, he would be statutorily eligible for asylum.

■■■ Eligibility for asylum based on a well-founded fear of future persecution requires an applicant to satisfy both a subjective and an objective test. *Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998). Applicants satisfy the subjective test by credibly testifying that they genuinely fear persecution by their government or forces that their government is unable or unwilling to control on account of a statutorily-protected ground. *Id.* The objective component is satisfied where credible, direct, and specific evidence in the record supports a reasonable fear of persecution. *Id.*

Malty's fear of the uncontrolled actions of Islamic militants suffices to meet the

---

**2.** Although the statute and regulation refer to "affidavits," we have treated affidavits and declarations interchangeably for purposes of motions to reopen, *see, e.g., Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir.2003); *Celis–Castellano v. Ashcroft*, 298 F.3d 888, 892 (9th Cir.2002), as well for purposes of BIA proceedings generally. *See, e.g., Lopez–Alvarado v. Ashcroft*, 371 F.3d 1111, 1118 (9th Cir. 2004); *Vera–Villegas v. INS*, 330 F.3d 1222, 1226 (9th Cir.2003); *Gafoor v. INS*, 231 F.3d 645, 654 (9th Cir.2000).

**3.** In some circumstances, the BIA has required additional evidence. For example, a petitioner seeking to reopen in order to adjust status on the basis of a marriage to an American citizen must submit a marriage certificate, proof of the spouse's citizenship, and proof that the spouse filed a visa petition on behalf of the petitioner. *See Matter of Velarde–Pacheco*, 23 I & N Dec. 253, 256 (BIA 2002). Even in these cases, however, a petitioner is not required to collect affidavits from relatives living overseas.

**4.** Notably, the government does not argue that there is anything unbelievable about the information in Malty's declaration, nor does it question the veracity of the Freedom House Report.

subjective component of the well-founded fear test. *See Singh*, 134 F.3d at 966 (an applicant's credible testimony fulfills the subjective prong); *see also Melkonian v. Ashcroft*, 320 F.3d 1061, 1069 (9th Cir. 2003). The evidence also appears to satisfy the objective component of the test. As in *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998), in which we found petitioners eligible for asylum, Malty has demonstrated a pattern and practice of persecution, including beatings, arrests, and threats, against his similarly situated family members. The attacks were perpetrated by militant anti-Christian groups that the government was either unwilling or unable to control. Furthermore, Malty's father was threatened that Malty would be arrested if he returned to Egypt. We have held that an applicant who is specifically targeted for persecution has a well-founded fear. *See, e.g., Melkonian*, 320 F.3d at 1068–69. Finally, Malty has introduced evidence regarding recent, widespread persecution of Coptic Christians that supports his claim. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1182–83 (9th Cir. 2003) (explaining that the level of individualized targeting that a petitioner must show is decreased when he is a member of a mistreated group).

■ A well-founded fear does *not* require proof that persecution is more likely than not; even a ten percent chance of persecution may establish a well-founded fear. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001). There is no question that Malty has demonstrated a reasonable likelihood of meeting this standard. Therefore, Malty has stated a prima facie case for asylum based on changed circumstances in his country of nationality.

### III. Conclusion

We grant the petition for review and remand to the BIA with instructions to reopen.

**REVERSED and REMANDED.**