

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2006

# Gebra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4591

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gebra v. Atty Gen USA" (2006). *2006 Decisions.* Paper 369.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/369

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4591
_____

ADEL RAGEIB GEBRA,
                    Petitioner

v.

ALBERTO GONZALES, Attorney General of the United States,
                    Respondent
_____

On Petition for Review of an Order of
the Board of Immigration Appeals
_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2006
_____

Before: MCKEE and AMBRO, Circuit Judges, and
RESTANI*, Judge

(Filed:  October 3, 2006)
_____

OPINION
_____

_____
        *Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

RESTANI, Judge.

Adel Rageib Gebra ("Gebra") petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying Gebra's second motion to reopen deportation proceedings based upon numerical limitations. We will deny the petition.

## I. Procedural and Factual Background

On November 15, 1992, Gebra, a native and citizen of Egypt, entered the United States as a non-immigrant visitor. On February 9, 1993, Gebra filed an application for asylum and withholding of removal, claiming that he would face persecution for his religious beliefs if he returned to Egypt. Gebra claims that he practiced Coptic Christianity in Egypt and remains a Coptic Christian today. On November 25, 1998, the immigration judge ("IJ") denied the asylum application, finding that Gebra was not a credible applicant for asylum and that his fear of future persecution was not well-founded. The IJ granted Gebra voluntary departure within 60 days. On December 8, 1998, Gebra filed a notice of appeal of the IJ's decision before the BIA, arguing that the IJ had imposed an incorrect standard of review and was predisposed to discredit him. On July 16, 2002, the BIA affirmed the IJ's decision without opinion and granted Gebra voluntary departure within 30 days. Gebra did not depart.

Instead, almost three years later on February 11, 2005, Gebra filed a motion to reopen removal proceedings with the BIA based upon "changed country conditions" pursuant to 8 C.F.R. § 1003.2(c)(3)(ii). In support of his application, he submitted the Ninth Circuit opinion, Malty v. Ashcroft, 381 F.3d 942 (9th Cir. 2004), in which a petition for review of a BIA order was granted on the basis of changed circumstances in Egypt. He also included

2

a twenty-two page affidavit from Paul Marshall, a senior fellow at the Center for Religious Freedom, describing a rise in violence in Egypt since September 11, 2001, directed against Coptic Christians by Islamic extremists. On March 22, 2005, the BIA denied Gebra's untimely motion to reopen, stating that the Ninth Circuit case was not binding authority, that Gebra had not presented new evidence with respect to his own personal circumstances in Egypt, and that the new evidence presented, while material, did not establish prima facie eligibility for relief so as to warrant reopening of removal proceedings.

Gebra did not petition for review of the BIA's denial of the motion to reopen. Rather, on June 23, 2005, Gebra filed a second motion to reopen with the BIA, again alleging changed country conditions. Gebra supported his motion with a copy of Malty, a nearly identical affidavit from Marshall, and a brief letter from the American Coptic Association. On September 19, 2005, the BIA denied the second motion to reopen, stating that the motion was numerically barred and that Gebra did not meet any of the statutory exceptions to the numerical restrictions on motions to reopen.

Gebra petitions for review of the BIA's denial of his second motion to reopen, arguing that the evidence presented in it established a change in country conditions to fulfill one of the statutory exceptions to the numerical restriction on successive motions to reopen.[1]

---

[1] Gebra also argues that the IJ erred in making an adverse credibility finding as to Gebra's original asylum and withholding application. Because Gebra has not filed a timely petition for review of the initial removal order, we do not have jurisdiction to review that decision. See Stone v. INS, 514 U.S. 386, 394–405 (1995) (holding that the deadline for appealing a final removal order is not tolled by a later filed motion to reopen or reconsider); Nocon v. INS, 789 F.2d 1028, 1033–34 (3d Cir. 1986) (holding that the

3

## II. Discussion

We have jurisdiction pursuant to 8 U.S.C. § 1252(b)(2) (2000). We review the denial of a motion to reopen for abuse of discretion. INS v. Abudu, 485 U.S. 94, 105 (1998). We uphold the BIA's decision to deny a motion to reopen unless the BIA's decision is "arbitrary, irrational, or contrary to law." Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994).

An alien has the right to file "only one motion to reopen deportation or exclusion proceedings," whether before the BIA or IJ. 8 C.F.R. § 1003.2(c)(2) (emphasis added). This numerical limitation does not apply, however, if an alien bases his petition to reopen upon "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. § 1003.2(c)(3)(ii). Here, the BIA concluded that Gebra did not meet any of the exceptions to the numerical restriction on successive motions to reopen and denied the motion as numerically barred under 8 C.F.R. § 1003.2(c)(2).

Gebra asserts that the BIA abused its discretion in denying his second motion to reopen and that the evidence presented in his second motion to reopen established a change in country condition. As previously discussed, Gebra supported his second motion by submitting Malty, a revised affidavit from Marshall, and a brief letter from the American Coptic Association. Preliminarily, Malty, and much of information in Marshall's revised

court has no jurisdiction to review a petition for review of a removal order submitted after the filing deadline).

4

affidavit, were already submitted to the BIA in Gebra's first motion to reopen. The BIA reviewed this evidence and held that it did not establish prima facie eligibility for relief. Because Gebra has not filed a timely petition for review of this decision, we have no jurisdiction to review it to determine whether the BIA abused its discretion in denying his first motion based upon the evidence presented. See 8 U.S.C. § 1252(b)(1) (stating that a petition for review must be filed no later than 30 days after the date of a final order of removal); see also Nocon, 789 F.2d at 1033 (holding that "strict compliance with the statutory directive is a jurisdictional prerequisite to judicial review"). We instead focus upon the additional information presented in support of Gebra's second motion to reopen.

Here, the additional information presented in Gebra's second motion to reopen, the letter from the American Coptic Association, and the minimal additions to Marshall's affidavit, are not new information that was previously unavailable and do not establish a change in country conditions in Egypt. As to the letter from the American Coptic Association, it merely states Gebra's former occupation in Egypt as a photographer, his involvement in the Coptic Church in Egypt, and his membership in the American Coptic Association since his arrival in the United States. J.A. 49–50. This information was available at the time of Gebra's asylum hearing. In fact, information about Gebra's occupation and involvement in the Coptic Church in Egypt was already presented at Gebra's asylum hearing.

The additional information contained in Marshall's revised affidavit also does not compel a different outcome in this case. The majority of the additions to Marshall's affidavit

5

are statements of Marshall's belief that Gebra would face persecution if he returned to Egypt. Marshall, however, states that he is not personally acquainted with Gebra and that he bases his belief upon his review of Gebra's "plausible" statement and asylum application. J.A. 34–35. Given that the IJ made an adverse credibility determination after reviewing Gebra's asylum application and holding an asylum hearing, we give little weight to Marshall's personal assessment.

Marshall's revised affidavit also contains brief descriptions of three more acts of violence in Egypt in 2005: a bombing of a tourist area in Cairo, J.A. 34, an attack upon a Coptic social service center, J.A. 32, and an abduction of a nineteen-year old Coptic girl, id. First, the bombing of a tourist area does not relate directly to the conditions faced by a Coptic Christian. Second, the brief description of two other attacks in Egypt does not significantly add to the information already examined by the BIA in Gebra's first motion to reopen. Thus, we hold that the BIA did not abuse its discretion in ruling that this evidence is not sufficient to qualify under any of the statutory exceptions to the limit upon successive motions to reopen.

Accordingly, we will DENY the petition for review.