NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | | |
|---|---|---|
| NASREEN SULTANA, | ) | No. 08-74771 |
| | ) | |
| Petitioner, | ) | Agency No. A070-886-295 |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| ERIC H. HOLDER, Jr., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 10, 2013[**]
San Francisco, California

Before:    RIPPLE,[***] FERNANDEZ, and CALLAHAN, Circuit Judges.

Nasreen Sultana, a native and citizen of Bangladesh, petitions for review of

the Board of Immigration Appeals' denial of her motion to reopen.  We deny the

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]The panel unanimously finds this case suitable for decision without oral argument.  Fed. R. App. P. 34(a)(2).

[***]The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

petition.

Over five years after her asylum petition was denied by the BIA and she was granted a voluntary departure period of thirty days, Sultana made a motion to reopen and claimed changed country conditions in Bangladesh. See 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i)–(ii). Sultana asserts that the BIA erred when it declared that the evidence did not show "such a change in conditions in Bangladesh as to warrant reopening of proceedings in this matter." We disagree.

We have reviewed the record and are satisfied that substantial evidence supports the BIA's determination. See Najmabadi v. Holder, 597 F.3d 983, 986 (9th Cir. 2010). Moreover, the BIA sufficiently exhibited its consideration of the evidence that Sultana placed before it. See Id., 597 F.3d at 990–91; Larita-Martinez v. INS, 220 F.3d 1092, 1095–96 (9th Cir. 2000). We are unable to conclude that a contrary decision was compelled by the evidence. See INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1, 483–84, 112 S. Ct. 812, 815 & n.1, 817, 117 L. Ed. 2d 38 (1992). Thus, the BIA did not abuse its discretion when it denied Sultana's motion to reopen. See Toufighi v. Mukasey, 538 F.3d 988, 992 (9th Cir. 2008); De Martinez v. Ashcroft, 374 F.3d 759, 761 (9th Cir. 2004).

Petition DENIED.

Sultana v. Holder, 08-74771

RIPPLE, Circuit Judge, dissenting:

I respectfully dissent from the majority's denial of Ms. Sultana's petition for review of the Board of Immigration Appeals' ("BIA" or "Board") denial of her motion to reopen. In my judgment, the BIA's opinion evinces inadequate consideration of Ms. Sultana's evidence of changed country conditions and fails to follow one of its own prior decisions. Therefore, I would remand this case to the BIA to reconsider Ms. Sultana's motion to reopen.

Although we presume that the BIA considered the evidence before it, such a presumption can be overcome. See Larita-Martinez v. INS, 220 F.3d 1092, 1095-96 (9th Cir. 2000). Specifically, "[t]he BIA abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for denying a motion to reopen." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted).

Ms. Sultana submitted country conditions evidence describing escalating mistreatment of those affiliated with the Jatiyo Party since the resurgence of the Bangladesh Nationalist Party ("BNP") in October 2001.[1] In its decision, the BIA

_____

[1] "The BNP was in power in Bangladesh until 1996, at which time the Awami League became the ruling party. In October 2001, the BNP returned to
(continued...)

did not sufficiently address this evidence, especially in light of Ms. Sultana's prior involvement with the Jatiyo Party and her mother's letter, indicating a continued interest in Ms. Sultana by the Jatiyo Party's political rivals. Specifically, Ms. Sultana produced a 2007 country condition report from the State Department, which we have stated is "often the most appropriate and perhaps the best resource for information on political situations in foreign nations," Kamalyan v. Holder, 620 F.3d 1054, 1057 (9th Cir. 2010) (internal quotation marks omitted). The BIA's disposition of this matter contains no indication that it considered this source, much less compared the assessment contained in that report against the conditions described in earlier reports. The Board's opinion makes no mention of this recent State Department estimation and certainly never comes to grips with the Department's observation that the political situation in Bangladesh has worsened substantially.

Similarly, the Board's evaluation of the views of Ms. Sultana's country expert, Dr. Adams, can best be characterized as inexplicably selective. Dr. Adams's report stated:

---

[1](...continued) power." Shardar v. AG of the United States, 503 F.3d 308, 314 (3d Cir. 2007). The Immigration Judge decided Ms. Sultana's asylum claim in 2000, during the Awami League's rule. The Immigration Judge specifically noted that State Department reports indicated that the Jatiyo Party was "part of the governing coalition" at the time of the hearing. A.R. at 338.

> The harrying of party members and leadership by the two Bangladesh Nationalist Party governments has been persistent.  Importantly, the BNP returned to power in the elections of October 2001 after five years of Awami League rule, which caused <u>a sharp change in country conditions</u>, restoring the context from which the applicant fled, but in a form that was more intensive and predatory.

A.R. at 50-51 (emphasis added).  The BIA dismissed this evidence as insufficient to establish changed country conditions, concluding that Dr. Adams's report "unfortunately shows a continuation of the political violence and upheaval previously noted by the Immigration Judge in his 2000 decision and shown by the evidence of record at the time of the respondent's 2000 hearing."  A.R. at 3.  The BIA's characterization is hardly a fair description of the report.  Indeed, its reasoning ignores that changed country conditions are found when conditions that exist at the time of the initial hearing before the Immigration Judge ("IJ") worsen.  It thus adopts the reasoning that we rejected in <u>Malty v. Ashcroft</u>, 381 F.3d 942 (9th Cir. 2004).  In <u>Malty</u>, we held:

> According to the BIA, Malty's evidence was insufficient to demonstrate changed circumstances because it described "a continuance of the circumstances that gave rise to his first claim."  This reasoning makes little sense.  A petitioner's evidence regarding changed circumstances will almost always relate to his initial claim; nothing in the statute or regulations requires otherwise.  The critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution.

<u>Id.</u> at 945.  Here, Ms. Sultana presented just such evidence--that the political

violence and upheaval that existed at the time of her hearing before the IJ had worsened with respect to Jatiyo Party members and activists. The BIA simply failed to deal with that evidence.

In Shardar v. AG of the United States, 503 F.3d 308, 314 (3d Cir. 2007), our colleagues in the Third Circuit found sufficient evidence of changed country conditions based on materially indistinguishable evidence--a report by Dr. Adams detailing the increased mistreatment of Jatiyo party members after the BNP's re-emergence in 2001.  The court in Shardar considered the BIA's denial of a motion to reopen made by an alien who, like Ms. Sultana, was affiliated with the Jatiyo Party during the BNP's rule in the 1990's, had a hearing before an IJ while a different regime was in power and moved to reopen when the BNP resurfaced after 2001.  The court held that "[t]he re-emergence of the political party responsible for the applicant's prior persecution is the type of situation that would constitute a change in country conditions." Id. at 315.

As the Third Circuit also pointed out in Shardar, and Ms. Sultana notes in her brief, "the Board itself has agreed that the re-emergence of the BNP is a change in Bangladeshi country conditions for a member of the Jatiya [sic] Party seeking asylum." Id. at 315 (citing In re Hossin, A70 907 367 (BIA Jan. 27, 2003) (unpublished)).  The BIA in Hossin concluded that "[c]onsidering the respondent's

political affiliation, the re-emergence of the BNP in Bangladesh would qualify as changed country circumstances warranting further review." A70 907 367. I agree with the Third Circuit that "regardless whether the <u>Hossin</u> decision is precedential, by reaching an exactly contrary decision on a materially indistinguishable set of facts, the Board acted arbitrarily." <u>Shardar</u>, 503 F.3d at 315; <u>see also</u> <u>Lesly Yajayra Perdomo v. Holder</u>, 611 F.3d 662, 669 (9th Cir. 2010) (granting petition for review "because the BIA's decision is inconsistent with its own opinions"). Although "the BIA may refine or change its [positions], it must provide a reasoned explanation for doing so." <u>Henriquez-Rivas v. Holder</u>, 707 F.3d 1081, 1091 n.13 (9th Cir. 2013). Here, the BIA ignored its own prior decision and has offered no explanation for doing so. Therefore, I conclude that the BIA has acted arbitrarily and abused its discretion.

In light of Ms. Sultana's evidence of changed conditions in Bangladesh, her mother's letter also is entitled to some weight and should have been considered. Ms. Sultana's evidence demonstrates that the BNP has re-emerged and resumed its targeting of Jatiyo Party members; her mother's letter indicates that the BNP still was interested in targeting her. This fact is relevant to her fear of future persecution.

Because the BIA did not consider Ms. Sultana's evidence of changed

country conditions, I would remand this case to the BIA for further consideration.