**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KURNIAWAN SALIM,

*Petitioner*,

v.

LORETTA E. LYNCH, Attorney General,

*Respondent*.

No. 13-71833

Agency No.
A077-302-674

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 9, 2016
Pasadena, California

Filed August 1, 2016

Before: Stephen Reinhardt and Kim McLane Wardlaw,
Circuit Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Reinhardt

---

*The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of a motion to reopen removal proceedings based on changed country conditions concerning the treatment of Christians in Indonesia.

The panel held that the Board improperly evaluated petitioner's submission of newly available, material evidence of changed country conditions in Indonesia, particularly in light of petitioner's conversion to Catholicism following his 2006 hearing and the change in the basis of his claim for relief. The panel concluded that the Board abused its discretion in concluding that petitioner's new evidence was "cumulative" of the evidence submitted at the time of the earlier hearing.

The panel also held that the Board erred in its analysis of petitioner's individualized risk of future persecution, as it failed to consider the evidence relating to that question in the context of his membership in a disfavored group.

The panel remanded for further proceedings consistent with its opinion.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David M. Haghighi (argued), Law Offices of David M. Haghighi, Los Angeles, California, for Petitioner.

Tracie N. Jones (argued), Trial Attorney; Cindy S. Ferrier, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

REINHARDT, Circuit Judge:

Kurniawan Salim ("Salim"), a native and citizen of Indonesia, petitions for review from the Board of Immigration Appeals' ("BIA") denial of his motion to reopen his asylum and withholding of removal proceedings. Salim is a practicing Catholic, and brings his motion to reopen due to changes in country conditions for Christians in Indonesia since his initial hearing before an Immigration Judge ("IJ") in 2006. We conclude that the BIA abused its discretion when it denied Salim's motion to reopen as untimely. Substantial evidence supports his claim of changed country conditions, and he has presented sufficient evidence of individualized risk to establish a prima facie case for the relief sought. We therefore grant the petition for review and remand for further proceedings consistent with this opinion.

## I.  Factual and Procedural Background

Salim arrived in the United States on a tourist visa on January 22, 2001. He and his wife are the parents of two

children, ages six and twelve, both of whom were born in the United States and are American citizens. Salim has no criminal record, and since 2004 has worked as a restaurant manager in California.

In 2003, the Department of Homeland Security initiated removal proceedings against Salim for having overstayed his initial visa. In response, Salim submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the basis of persecution he faced in Indonesia due to his Chinese ethnicity. On February 22, 2006, the IJ denied Salim's asylum application as untimely, and rejected his withholding of removal and CAT claims. The BIA affirmed this decision on September 26, 2007.

Salim then appealed to this court, which remanded to the BIA in light of our holding in *Wakkary v. Holder*, 558 F.3d 1049 (9th Cir. 2009), that an asylum applicant's membership in a disfavored group is relevant to his request for withholding of removal. On remand, the BIA again denied Salim's application for withholding of removal, concluding that Salim had not demonstrated a sufficient individualized risk of persecution on account of his Chinese ethnicity. On October 15, 2012 this court upheld the BIA decision in an unpublished memorandum disposition. *Salim v. Holder*, 483 F. App'x 386 (9th Cir. 2012) (unpublished).

The case comes back before us today after Salim moved to reopen his immigration proceedings in March of 2013. While a motion to reopen must generally be filed no later than 90 days after a final removal decision, 8 C.F.R. § 1003.2(c)(2), the deadline does not apply to applications or reapplications for asylum or withholding of removal that are

"based on changed circumstances arising in the country of nationality." 8 C.F.R. § 1003(c)(3)(ii). Salim filed his motion pursuant to this "changed country conditions" exception.

In the time between his previous hearing in 2006 and his motion to reopen in 2013, Salim converted from Buddhism to Catholicism. In light of his conversion, Salim stated that he sought to reopen his asylum claim because circumstances had "changed dramatically" for Indonesian Christians since 2006. Salim explained that "anti-Christian sentiment ha[s] increased in the recent months" in Indonesia, and that the government was no longer taking steps to "maintain religious freedom." For support, Salim submitted over 100 pages of evidence documenting the rising violence against Indonesian Christian communities. Salim additionally presented a sworn personal declaration attesting to his fear of returning to Indonesia as a Catholic, as well as a letter from his sister in Jakarta describing the recent targeting of their local church.

On May 8, 2013, in a page-long opinion, the BIA denied Salim's motion to reopen as untimely. According to the BIA, Salim had failed to meet the changed country conditions exception because the material attached to his motion was "largely cumulative of the evidence presented when this case was last before the Immigration Judge." Furthermore, the BIA stated that, "[t]here is nothing in the evidence submitted that relates specifically to the respondent." Finally, the BIA noted that while Salim's motion was based on his fear of persecution as a Catholic, he had "previously indicated that he is a Buddhist." Salim timely petitioned for review of the BIA's decision, and the instant petition for review followed.

## II.  Standard of Review

We review the denial of a motion to reopen for abuse of discretion. *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). We review the BIA's determination of legal questions de novo, and factual findings for substantial evidence. *Bhasin v. Gonzales*, 423 F.3d 977, 983 (9th Cir. 2005).

## III.    Analysis

### A.  Changed Country Conditions

Judicial review of a motion to reopen serves as a "safety valve" in the asylum process. *Fernandez v. Gonzales*, 439 F.3d 592, 602 (9th Cir. 2006) (citation omitted).  Such oversight "ensure[s] that the BIA lives by its rules and at least considers new information" bearing on applicants' need for and right to relief. *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004). Salim's case demonstrates the importance of this authority. Here, the BIA committed both legal and factual error when it declared that Salim's motion to reopen, filed on an entirely distinct ground from his prior request for relief, was "cumulative" of the information presented at his previous hearing.

To meet the changed country conditions exception, a petitioner's motion to reopen must present evidence that is "material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). Thus, the changed country conditions exception is concerned with two points in time: the circumstances  of the country at the time of the petitioner's previous hearing, and those at the time of the motion to reopen. The "critical question is not whether the allegations

bear some connection to a prior application, but rather whether circumstances have changed sufficiently" in the country since the prior hearing so that the petitioner now has a legitimate claim for asylum. *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004). Put otherwise, the evidence submitted with the motion to reopen must be "qualitatively different from the evidence presented at [the] asylum hearing." *Id.*

Salim first filed for asylum in 2006 because he feared returning to Indonesia due to his Chinese ethnicity. While Salim's initial application included minimal evidence related to the mistreatment of Christians in Indonesia, he was at that time a Buddhist, and such assertions were therefore not the basis of his asylum claim.[1] The overwhelming majority of the evidence instead related to the persecution of Salim and his family members due to their Chinese ethnicity. Now, Salim has converted to Catholicism, and seeks refuge in this country due to his risk of persecution in Indonesia on account of his Christian faith. As we recently recognized in *Chandra v. Holder*, 751 F.3d 1034, 1038 (9th Cir. 2014), changed country conditions can become material due to changes in a petitioner's personal circumstances, including religious

---

[1] The evidence relating to the persecution of Christians in Indonesia submitted with Salim's initial asylum application in 2006 was limited. It consisted of four articles addressing the topic, most of which described isolated, specific incidents. None of the evidence submitted in 2006 demonstrates the rising, widespread persecution alleged in Salim's motion to reopen. Indeed, two of the articles reference the "relatively safe" state of Christians and the "Muslim-Christian peace" as of 2004.

conversion.**[2]** In this case, the BIA correctly recognized that Salim's motion to reopen and accompanying application for asylum and other relief were based on his Christian faith, rather than his Chinese ethnicity. The BIA erred, however, in its assessment of the evidence presented.

According to the BIA, Salim's motion did not meet the changed country conditions exception because the evidence he submitted was "largely cumulative" of that offered when the case was before the IJ in 2006. This reasoning makes little sense where, as here, the motion to reopen presents a different basis for relief than was relied upon during the prior hearing. In such cases, the evidence related to the new claim for relief is necessarily "qualitatively different" from that offered at the earlier hearing. Thus, the only question that remains before the BIA is whether the motion to reopen demonstrates a change in country conditions with respect to the petitioner's current basis for relief. The comparison to be made is not between the motion to reopen and the previous application, but between the country conditions at the time of the instant motion, and those at the time of the prior hearing. It was therefore legal error for the BIA to conclude that Salim's

---

**[2]** Although we decided *Chandra* two weeks after the briefing was submitted in this case, neither party requested a remand, nor raised that opinion during oral argument. The BIA agreed that Salim was seeking to reopen his case "on account of his Christian faith" and, unlike in *Chandra*, did not rely on Salim's changed personal circumstances when it denied his motion to reopen as untimely. Moreover, the record is adequately developed as to the issues on which the agency ruled. Thus, we conclude that remand in this case on the basis of *Chandra* is not required under *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam). *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1052 (9th Cir. 2005) (declining to remand when the "agency has already brought 'its expertise to bear upon the matter' and 'evaluate[d] the evidence'") (quoting *Ventura*, 537 U.S. at 17).

motion to reopen was "cumulative" of his 2006 application. Analyzed under the correct standard, substantial evidence demonstrates that Salim's motion to reopen meets the changed country conditions exception.

To support his claim of changed conditions in Indonesia, Salim submitted numerous articles on the mistreatment of Christians. Salim further provided multiple reports documenting "an upsurge of religious radicalism" and describing the growth of an "extremist fringe" in recent years. These articles explained that "cases of intolerance are on the rise," and that "Christians ha[ve] replaced the Islamic minority sect Ahmadiyah as the group whose religious freedoms have been violated the most." There is substantial evidence that these developments occurred after 2006, as the reports state that Christians have increasingly been the target of Islamic extremist movements in the "past two or three years."

Beyond the documentary evidence of increased persecution of Christians generally, Salim also submitted a 2013 letter from his sister, who remains in Jakarta.[3] In her letter, Salim's sister described the rising fear experienced by his immediate family in Indonesia, and warned Salim that he and his wife and children "should not return home." She is Christian, and explained that in light of the growing threat of violence and lack of protection from local police, "Mom and I don't dare to go to church." These fears were reiterated in Salim's sworn declaration, in which he stated that "more and

---

[3] While Salim's sister and mother remain in Indonesia, his brother was granted asylum in the United States on May 8, 2012. Salim's motion to reopen states that his brother was granted asylum due to the "anti-Christian [climate] in Indonesia."

more violent activities towards Catholics/Christians" were happening every day. Salim described an increase in attacks on Christian worshipers, and stated that the local police would not provide for his family's protection if they attended church.

We have previously found similar evidence sufficient to meet the burden of proof required under the changed country conditions exception. In *Malty*, we remanded the BIA's denial of an untimely motion to reopen when the petitioner, a Coptic Christian, was able to show a qualitative change in the level of persecution in Egypt "both with respect to Coptic Christians generally and with respect to [his] family specifically." *Malty*, 381 F.3d at 946. The petitioner in *Malty* submitted a report detailing the increased persecution of Coptic Christians and a personal declaration describing the recent intimidation of his family members who remained in Egypt. *Id.* Faced with this evidence, the BIA denied the motion on the ground that it showed a "mere continuance of the previous circumstances." *Id*. We held, however, that the BIA abused its discretion, and concluded that the petitioner's materials were "sufficient to meet the evidentiary burden in the motion to reopen context." *Id*. at 947.**[4]** In the present case, the BIA has made an error remarkably similar to the one it made in *Malty*.

---

**[4]** In *Malty*, we noted that many petitioners may face difficulty in procuring supporting affidavits for a motion to reopen on the basis of changed country conditions. We therefore specifically rejected the need for corroborating affidavits from relatives living outside of the United States, and concluded that a motion to reopen may be supported solely by "a sworn statement from the movant." 381 F.3d at 947.

The evidence accompanying Salim's motion to reopen more than meets the burden of proof required to establish changed country conditions. In *Malty*, the petitioner submitted only a single third-party report and his own sworn declaration attesting to increased violence against Christians. *Id.* at 946–47. Here, Salim has offered hundreds of pages of news articles, a letter from his sister who remains in Indonesia, and a sworn declaration stating that he fears returning to Indonesia because the conditions for Christians have "changed dramatically" since he left. Such evidence is sufficient to support a motion to reopen. Thus, the BIA abused its discretion when it concluded that the evidence proffered did not "meaningfully reflect" changed country conditions in Indonesia.

## B.  *Individualized Risk*

Having concluded that Salim's motion to reopen meets the changed country conditions exception, we now turn to Respondent's contention that Salim did not make a sufficient showing of individualized risk.  Pointing to the line in the BIA's opinion stating that "nothing in the evidence submitted . . . relates specifically to [Salim]," Respondent claims that the motion to reopen was properly denied because Salim "does not make any meaningful arguments that he has an individualized risk" of future persecution, and thus could not overcome the timeliness bar.

We have repeatedly held that a motion to reopen "need only establish a prima facie case for relief, and need not conclusively establish that [the petitioner] warrants relief." *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003). A party demonstrates prima facie eligibility for relief "where the evidence reveals a reasonable likelihood that the statutory

requirements for relief have been satisfied." *Id.* (quoting *In re S-V-M*, 22 I. & N. Dec. 1306 (B.I.A. 2000)). The Supreme Court has also recognized that asylum may be granted where an applicant demonstrates a one-in-ten chance of future persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987). Thus, Salim's motion to reopen must establish only a reasonable likelihood that, if returned to Indonesia, he faces at least a one-in-ten chance of persecution because of his Christian faith.

As an Indonesian Christian, Salim is a member of a disfavored group. *Tampubolon v. Holder*, 610 F.3d 1056, 1058 (9th Cir. 2010). While membership in a disfavored group is not by itself sufficient to demonstrate eligibility for asylum, "the 'more serious and widespread the threat' to the group in general, 'the less individualized the threat of persecution needs to be.'" *Sael v. Ashcroft*, 386 F.3d 922, 925 (9th Cir. 2004) (quoting *Mgoian v. INS*, 184 F.3d 1029, 1035 n.4 (9th Cir. 1999)). Christians in Indonesia are "subject to violence and official discrimination," and the government has largely acquiesced in their persecution by those following "militant expressions of Islam." *Tampubolon*, 610 F.3d at 1060. Salim's family members who remain in Indonesia have been subject to such intimidation, and the motion to reopen alleges that the situation for Christians continues to deteriorate.

Although the BIA opinion acknowledged that Salim's motion to reopen was based on his Christian faith, there is no indication that the BIA applied the disfavored-group analysis to his case. The BIA did not mention our recognition of Indonesian Christians as a persecuted group, or consider the evidence Salim submitted in light of his group-based claim. The decision instead stated that no evidence "relates

specifically" to Salim's individualized risk of persecution. Yet this statement is  refuted by the immediately preceding sentence, in which the BIA noted that Salim submitted a personal declaration and a letter from his family in Jakarta.

Salim's motion to reopen explicitly relied upon the "personal experiences" described by his sister, which he stated "hit[] very close to home." Her letter detailed the recent threats against the family's local church and their growing inability to freely practice their faith. In ignoring the importance of Salim's statement and his sister's letter, the BIA failed to recognize that, just as such evidence supports Salim's claim of changed country conditions in Indonesia, so too does it demonstrate his heightened individualized risk if returned.  While the BIA "does not have to write an exegesis on every contention," *Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004) (internal quotation marks omitted), it "must show proper consideration of all factors . . . in determining whether to grant a motion to reopen." *Bhasin v. Gonzales*, 423 F.3d at 983. In this case, the BIA committed legal error when it failed to analyze Salim's individualized threat of persecution in light of his membership in a disfavored group, and instead summarily concluded that Salim's evidence addressed only "general conditions in Indonesia."

The only other statement in the BIA's opinion that could be read as finding that Salim did not present sufficient evidence to be prima facie eligible for relief is the agency's observation that "to the extent the evidence addresses anti-Christian sentiment, we note that the respondent . . . previously indicated that he is a Buddhist." Insofar as this line reflects the BIA's rejection of Salim's claim of individualized risk because of doubt about the good faith of his claim to be

a Christian, this circuit has "long held that credibility determinations on motions to reopen are inappropriate." *Bhasin*, 423 F.3d at 986. The BIA is required to credit evidence supporting a motion to reopen unless it is "inherently unbelievable." *Tadevosyan v. Holder*, 743 F.3d 1250, 1256 (9th Cir. 2014) (citation omitted). Nothing in the record before the court casts such doubt on Salim's conversion to Christianity.[5] Thus, evaluating Salim's motion in light of his status as a member of a disfavored group, substantial evidence does not support a finding by the BIA that Salim failed to demonstrate sufficient evidence of individualized risk to make a prima facie case for relief.[6]

---

[5] By way of explaining the BIA's comment regarding Salim's prior Buddhism, Respondent alleges that it is "unclear whether Salim is a practicing Christian," and that "[i]n his opening brief, Salim provides confusing statements regarding his religion." This argument is an unacceptable characterization of what is clearly a typographical error in Petitioner's brief. As Respondent notes, Salim's opening brief contains a sentence stating that "[t]hough born a Buddhist, he attended Catholic schools and is not a practicing Catholic, as are his wife and children." However, this line must be read in the context of Salim's statement shortly afterward regarding his present status as a Christian, and his self-identification as Christian in his motion to reopen and accompanying petition for asylum. Indeed, Respondent's allegation is entirely contrary to the premise of Salim's claim for relief—his fear of persecution on account of his Christian faith. These undisputed facts compel the conclusion that the sentence Respondent deems "confusing" was in fact intended to read he "is *now* a practicing Catholic, as are his wife and children." We therefore reject any reliance by Respondent on this error.

[6] Salim's motion to reopen also asserted that he was eligible for withholding of removal and relief under the Convention Against Torture. Because we conclude that Salim made a prima facie case for asylum as a member of a disfavored group, we need not determine whether he established a prima facie case for his additional claims.

## IV.    Conclusion

We conclude that the BIA improperly evaluated Salim's submission of newly available, material evidence of changed country conditions in Indonesia, particularly in light of Salim's conversion to Catholicism following his 2006 hearing and the change in the basis of his claim for relief. The Board abused its discretion in concluding that the evidence provided with his motion to reopen was "cumulative" of the evidence submitted at the time of the earlier hearing. Likewise, the BIA erred in its analysis of Salim's individualized risk, as it failed to consider the evidence relating to that question in the context of his membership in a disfavored group. Given the Board's legal errors in rejecting Salim's motion to reopen, we grant his petition for review, and remand for further proceedings consistent with this opinion.

**PETITION GRANTED AND REMANDED.**