NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| HORTENCIA RIVERA TOVAR, | No. 12-73828 |
| Petitioner, | Agency No. A072-530-958 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 8, 2016
Pasadena, California

Before:    **KOZINSKI**, **GOULD** and **HURWITZ**, Circuit Judges.

**1.** Rivera moved to reopen her removal proceedings in 2011, over fifteen years after the Immigration Judge (IJ) denied her applications for asylum, withholding of removal and relief under the Convention Against Torture (CAT). Because her motion to reopen was not filed within ninety days of the IJ's 1995

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

decision or before September 30, 1996, 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1), it is time-barred unless relief is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

The Board of Immigration Appeals (BIA) didn't abuse its discretion in concluding that Rivera failed to present material evidence of changed circumstances in Guatemala.  The principal piece of evidence that Rivera relied on was a 300% increase in the number of femicides in Guatemala between 1999 and 2008.  But a substantial increase doesn't necessarily mean a material increase.  See Malty v. Ashcroft, 381 F.3d 942, 945 (9th Cir. 2004) ("The critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution.").  As the BIA noted, "the documentation . . . indicates that Guatemala has a population of approximately 14 million persons; yet, the most recent statistics . . . show that 722 women were killed in Guatemala in 2008."  Assuming that women make up about half the population, 722 women represent little more than

one-ten-thousandth of the female population in Guatemala.[1]  Tragic as this is, it

falls well short of the one-in-ten probability that, according to the Supreme Court,

generally establishes a well-founded fear.  I.N.S. v. Cardoza-Fonseca, 480 U.S.

421, 440 (1987); see also Al-Harbi v. I.N.S., 242 F.3d 882, 888 (9th Cir. 2001)

("[E]ven a ten percent chance of persecution may establish a well-founded fear.").

The dissent criticizes us for reading Cardoza-Fonseca to set a strict probability test.

Dissent at 2–3.  But even assuming that a probability lower than one-in-ten may

constitute a "reasonable possibility," Cardoza-Fonseca, 480 U.S. at 440, we do not

see how the probability of one-in-ten-thousand does.  Because the submitted

evidence fails to show that Rivera today would have a legitimate claim for asylum

that she didn't have in 1995, the BIA acted within its discretion in denying her

untimely motion to reopen.

Even taken together with other evidence of violence against women in

Guatemala, the femicide statistics don't push Rivera over the threshold required for

asylum eligibility.  Rivera "simply recounts generalized conditions in [Guatemala]

that fail to demonstrate that her predicament is appreciably different from the

---

[1]     The dissent focuses on the change between 1999 and 2010, rather than the change between 1999 and 2008.  See Dissent at 1–2.  Because the number of femicides in Guatemala dropped in 2009 and 2010, the femicide rate is even lower when calculated with the 2010 figure.

dangers faced by her fellow citizens," and this isn't sufficient to establish materially changed circumstances. Najmabadi v. Holder, 597 F.3d 983, 990 (9th Cir. 2010) (internal quotation marks and citation omitted).

Rivera criticizes the BIA for relying on In re S-Y-G-, 24 I & N Dec. 247 (BIA 2007) and characterizing the increase in femicide rate as "incremental or incidental." In S-Y-G-, the BIA denied the petitioner's untimely motion to reopen because the change in China's family planning policy was merely "incremental or incidental." 24 I & N Dec. at 257. In that case, the BIA wasn't using the terms "incremental or incidental" in some numerical sense. Rather, the BIA characterized the policy change as "incremental or incidental" because the petitioner had failed to articulate how the new policy was different from the previously enunciated policy "in some relevant and material way." Id. Similarly, the increase in the femicide rate—though it appears substantial in a numerical sense—had an "incremental or incidental" impact on Rivera's asylum application.

The dissent attempts to distinguish this case from In re S-Y-G-, by pointing out that Rivera is not making the same argument that she first offered in 1995. Dissent at 2. We agree that Rivera's initial application was based on persecution of her brother by guerillas. Id. at 2 n.2. But we do not see the relevance of this fact. Based on this, the dissent concludes that "the evidence Rivera submitted in

support of the motion to reopen was plainly 'previously unavailable' and 'qualitatively different.'" Id. at 2 (citing Malty, 381 F.3d at 945–46). Of course, this is true as a matter of logic any time a petitioner files a motion to reopen based on a new theory of asylum with evidence of change that took place since his initial application. But the central question in this case is whether the submitted evidence was material, not whether it was previously available or qualitatively different. We do not see how the fact that Rivera is asserting a new theory of asylum bears on the evidence's materiality.[2]

**2.** The deportation of Rivera's former abusive domestic partner to Guatemala back in 2000—eleven years before she moved to reopen her removal proceedings—doesn't compel a contrary conclusion. As an initial matter, it's unclear whether this constitutes a "country condition[] arising in [Guatemala]." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). But even if we assume that it does, as the BIA did, it wasn't material. Rivera hasn't presented any evidence that her former abuser continued to threaten her or attempted to contact her after he left the United States. In the absence of any evidence of "individualized relevancy,"

---

[2] If anything, that Rivera is asserting a new theory of asylum makes it more difficult to assess whether she could have asserted the same asylum claim back in 1995 and therefore what the incremental effect of her new evidence is.

Najmabadi, 597 F.3d at 989, we cannot conclude that the BIA acted "arbitrarily, irrationally, or contrary to the law," Movsisian v. Ashcroft, 395 F.3d 1095, 1098 (9th Cir. 2005) (citation omitted).

**3.** Rivera also seems to imply that recent Ninth Circuit cases constitute a material change in country conditions. But it is well-settled that a change in case law does not excuse an untimely filing of a motion to reopen. Azanor v. Ashcroft, 364 F.3d 1013, 1022 (9th Cir. 2004).

**4.** Because the BIA didn't analyze whether Rivera presented a prima facie case for relief, neither do we. Rivera's failure to present material evidence of changed circumstances in Guatemala independently supports the denial of her untimely motion to reopen the removal proceedings.

**DENIED.**

*Tovar v. Lynch*, No. 12-73828

HURWITZ, Circuit Judge, dissenting:

Although the BIA might well have denied Rivera's motion to reopen because she did not file it promptly after learning of changed country conditions, it did not do so. Rather, it rejected the motion because it concluded that Rivera had shown only an incidental change in country conditions. Because I believe that Rivera made a prima facie showing of a material change of conditions in Guatemala, I would grant the petition for review and remand to the BIA for further consideration of the motion to reopen.

1. The motion to reopen contended that Rivera is a member of a social group of women subject to persecution because of the Guatemalan government's unwillingness or inability to protect them against domestic violence. *See Perdomo v. Holder*, 611 F.3d 662, 667-69 (9th Cir. 2010) (finding that the BIA "erred in determining that women in Guatemala cannot be a cognizable social group"). The BIA did not find otherwise.

2. The evidence before the BIA documented a 288% increase in "femicide"—the murder of women—in Guatemala since Rivera's initial application for asylum was denied. The BIA concluded that "[a]lthough the documentation submitted by the respondent does reveal some increase in violence against women in Guatemala, the respondent has not demonstrated that this increase constitutes a material change

1

in circumstances in Guatemala, as opposed to an 'incremental or incidental' change. *See Matter of S-Y-G-*, 24 I&N Dec. 247, 257 (BIA 2007)." The agency further concluded that because "Guatemala has a long history of violence against women, gender inequality, and the institutionalized acceptance of impunity for offenders," the "incremental increase in violence" since Rivera was denied asylum in 1995 was not a material change in country conditions.

3. A three-fold increase in femicide between 1999 and 2010 is hardly insignificant. *See Malty v. Ashcroft*, 381 F.3d 942, 945-46 (9th Cir. 2004).[1] This case is not like *S-Y-G-*, where the applicant was "still making the same argument she first offered in 1996." 24 I. & N. Dec. at 258-59. Rather, the evidence Rivera submitted in support of the motion to reopen was plainly "previously unavailable" and "qualitatively different." *Malty*, 381 F.3d at 945-46.[2]

4. Thus, the issue is whether the documented increase in femicide in Guatemala since Rivera was denied asylum gave rise to a well-founded fear of persecution. *Id.* To support a well-founded fear, the chance of persecution need

---

[1] This figure likely underrepresents the increase in violence against women since 1995, because data was unavailable for years before 1999. Moreover, during the country's civil war—which ended in 1996—"[m]ost victims . . . were members of Mayan indigenous groups living in rural areas whereas most of the reported murder victims in Guatemala today are latino women" like Rivera.

[2] Rivera's first application for asylum was based on persecution of her brother by guerillas.

2

only be a "reasonable possibility." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987). *Cardoza-Fonseca* does not require a risk of persecution to be at least one-in-ten to support a well-founded fear. Rather, there the Court was simply illustrating the point that only a "reasonable possibility" of persecution—not a "probability"—was required, by noting that if one out of ten males were persecuted in a country, a returning male would surely have a well-founded fear of persecution. *Id.* at 440-41.

5. In determining whether Rivera had a well-founded fear of persecution, the BIA was required to consider not only the objective evidence of conditions in Guatemala, but also her subjective state of mind. *Id.* at 430-31. The objective evidence, which the BIA did not discount, is stark. The State Department's country report documents that Guatemalan police and the judiciary remain largely unwilling to enforce domestic violence laws. Five hundred women were murdered in Guatemala in 2004, but only one femicide resulted in a conviction. And, subjectively, Rivera had an even greater reason to fear persecution than the average member of her social group. Her ex-boyfriend, while in the United States, beat her so severely that she required uterine surgery. That boyfriend has since been deported to Guatemala and threatened to kill Rivera if she returns.

6. Under these circumstances, I believe that Rivera presented a prima facie case of materially changed country conditions. I therefore respectfully dissent.

3