HURWITZ, Circuit Judge,
dissenting:
Although the BIA might well have denied Rivera’s motion to reopen because she did not file it promptly after learning of changed country conditions, it did not do so. Rather, it rejected the motion because *695 it concluded that Rivera had shown only an incidental change in country conditions. Because I believe that Rivera made a pri-ma facie showing of a material change of conditions in Guatemala, I would grant the petition for review and remand to the BIA for further consideration of the motion to reopen.
1. The motion to reopen contended that Rivera is a member of a social group of women subject to persecution because of the Guatemalan government’s unwillingness or inability to protect them against domestic violence. See Perdomo v. Holder, 611 F.3d 662, 667-69 (9th Cir. 2010) (finding that the BIA “erred in determining that women in Guatemala cannot be a cognizable social group”). The BIA did not find otherwise.
2. The evidence before the BIA documented a 288% increase in “femicide”—the murder of women—in Guatemala since Rivera’s initial application for asylum was denied. The BIA concluded that “[although the documentation submitted by the respondent does reveal some increase in violence against women in Guatemala, the respondent has not demonstrated that this increase constitutes a material change in circumstances in Guatemala, as opposed to an ‘incremental or incidental’ change. See Matter of S-Y-G-, 24 I&N Dec. 247, 257 (BIA 2007).” The agency further concluded that because “Guatemala has a long history of violence against women, gender inequality, and the institutionalized acceptance of impunity for offenders,” the “incremental increase in violence” since Rivera was denied asylum in 1995 was not a material change in country conditions.
3. A three-fold increase in femicide between 1999 and 2010 is hardly insignificant. See Malty v. Ashcroft, 381 F.3d 942, 945-46 (9th Cir. 2004).[1] This case is not like S-Y-G-, where the applicant was “still making the same argument she first offered in 1996.” 24 I. & N. Dec. at 258-59. Rather, the evidence Rivera submitted in support of the motion to reopen was plainly “previously unavailable” and “qualitatively different.” Malty, 381 F.3d at 945-46.[2]
4. Thus, the issue is whether the documented increase in femicide in Guatemala since Rivera was denied asylum gave rise to a well-founded fear of persecution. Id. To support a well-founded fear, the chance of persecution need only be a “reasonable possibility.” INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Cardozar-Fonseca does not require a risk of persecution to be at least one-in-ten to support a well-founded fear. Rather, there the Court was simply illustrating the point that only a “reasonable possibility” of persecution—not a “probability”—was required, by noting that if one out of ten males were persecuted in a country, a returning male would surely have a well-founded fear of persecution. Id. at 440-41, 107 S.Ct. 1207.
5. In determining whether Rivera had a well-founded fear of persecution, the BIA was required to consider not only the objective evidence of conditions in Guatemala, but also her subjective state of mind. Id. at 430-31, 107 S.Ct. 1207. The objective evidence, which the BIA did not discount, is stark. The State Department’s *696 country report documents that Guatemalan police and the judiciary remain largely unwilling to enforce domestic violence laws. Five hundred women were murdered in Guatemala in 2004, but only one femi-cide resulted in a conviction. And, subjectively, Rivera had an even greater reason to fear persecution than the average member of her social group. Her ex-boyfriend, while in the United States, beat her so severely that she required uterine surgery. That boyfriend has since been deported to Guatemala and threatened to kill Rivera if she returns.
6. Under these circumstances, I believe that Rivera presented a prima facie case of materially changed country conditions. I therefore respectfully dissent.

. This figure likely underrepresents the increase in violence against women since 1995, because data was unavailable for years before 1999. Moreover, during the country’s civil war—which ended in 1996—"[m]ost victims ... were members of Mayan indigenous groups living in rural areas whereas most of the reported murder victims in Guatemala today are latino women” like Rivera.

. Rivera’s first application for asylum was based on persecution of her brother by guerillas.