NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 15 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE DE JESUS GONZALEZ-
ALVARADO, AKA Ruben Ayon Cruz,
AKA Apollinaire Jimenez,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.   17-72780
       18-70854

Agency No. A097-764-811

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 4, 2019
Seattle, Washington

Before:  GOULD and NGUYEN, Circuit Judges, and R. COLLINS,[**] District
Judge.

Jose de Jesus Gonzalez-Alvarado, a native and citizen of Mexico, petitions

for review of decisions by the Board of Immigration Appeals ("BIA") dismissing

his appeal from an immigration judge's ("IJ") denial of deferred removal under the

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

Convention Against Torture ("CAT") and denying his motion to reopen. We have jurisdiction under 8 U.S.C. § 1252. *See Agonafer v. Sessions*, 859 F.3d 1198, 1202–03 (9th Cir. 2017). We review the BIA's legal determinations de novo, its factual findings for substantial evidence, and its denial of a motion to reopen for abuse of discretion. *See Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016). We deny the petition as to the denial of the motion to reopen, grant the petition as to the denial of deferred removal under the CAT, and remand for further proceedings.

1. In his motion to reopen, Gonzalez-Alvarado presented no new evidence to undermine the agency's finding that he failed to show a likelihood of government acquiescence in torture. A motion to reopen "is purely fact-based, seeking to present newly discovered facts or changed circumstances since a petitioner's hearing," and "is not a means by which the BIA can correct its own legal error." *Doissaint v. Mukasey*, 538 F.3d 1167, 1170 (9th Cir. 2008). While the BIA can construe a motion to reopen as a motion for reconsideration, *see Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005), Gonzalez-Alvarado did not address government acquiescence. Because the agency's finding regarding acquiescence was an independent basis to deny CAT relief, the BIA did not abuse its discretion in denying the motion to reopen. *See INS v. Abudu*, 485 U.S. 94, 104 (1988) (explaining that "the BIA may deny a motion to reopen" if "the movant has not established a prima facie case for the underlying substantive relief sought").

2.   In affirming the IJ's denial of deferred removal under the CAT, the BIA largely adopted the IJ's decision.[1]  In particular, the BIA found that the IJ did not clearly err in making three findings that are independent grounds to deny relief: (a) there is insufficient corroboration that Gonzalez-Alvarado's "feared persecutor," Chuy, "is a high-ranking . . . member" of the Cartel Jalisco New Generation ("CJNG") who "remains affiliated with the cartel with the power and influence to direct its members to locate and torture [Gonzalez-Alvarado]"; (b) "the government of Mexico does not collaborate or acquiesce in cartel violence"; and (c) there is insufficient evidence that the CJNG "remains . . . interested [in] target[ing]" Gonzalez-Alvarado.  Each of these findings is unsupported by the record.

(a)   When an IJ requires an otherwise credible applicant for relief from removal to provide corroboration for his or her claim, the IJ must give the applicant notice and an opportunity to provide such evidence.  *See Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011).  The IJ failed to do so.  There is no material

---

[1] Although the BIA "adopt[ed] and affirm[ed] the [IJ's] . . . decision that [Gonzalez-Alvarado] has not met his burden of establishing eligibility for deferral of removal," the BIA appears not to have relied on the IJ's specific finding that Gonzalez-Alvarado could relocate within Mexico.  The BIA acknowledged that Gonzalez-Alvarado "contests [this] determination" but did not address its merits.  The BIA merely noted "that the ability to relocate is one of many relevant factors that could be considered in establishing whether it is more likely than not that torture will occur."

difference between the asylum statute at issue in *Ren* and the statute governing CAT relief, *compare* 8 U.S.C. § 1158(b)(1)(B)(ii) (asylum), *with* 8 U.S.C. § 1229a(c)(4)(B) (CAT relief), and the due process concerns that animated *Ren* apply with equal force here.  Moreover, the IJ failed to explain why the statements to Gonzalez-Alvarado by his uncle Juan were insufficiently corroborative.  Juan was "involved really deeply" in a cartel, and he confirmed Chuy's potentially self-serving statements about being a cartel member.  Finally, the IJ failed to explain why Chuy in particular—rather than CJNG members generally—needed to have the intent and means to torture Gonzalez-Alvarado upon his return to Mexico.  Gonzalez-Alvarado testified that cartels torture police informants "to intimidate others" and presented corroborating expert evidence.  The risk of torture claimed by Gonzalez-Alvarado is not simply that Chuy will torture him out of revenge, but that the CJNG has an organizational interest in torturing him to deter others from becoming informants.

(b)   In concluding that Gonzalez-Alvarado failed to show that the Mexican government would acquiesce in torture by the CJNG, the IJ improperly focused solely on actions taken by the federal government and not by local officials.  *See Madrigal v. Holder*, 716 F.3d 499, 510 (9th Cir. 2013).  The IJ also improperly considered only governmental efforts to combat cartels without considering their effectiveness.  *See id.* at 509.  Here, as in *Madrigal*, the IJ failed

4

to consider "[v]oluminous evidence," including country and expert reports, "that corruption of public officials in Mexico remains a problem, particularly at the state and local levels of government, with police officers . . . frequently working directly on behalf of drug cartels." *Id.* at 510.

The BIA concluded that the evidence of human rights violations in Mexico was "not particular to [Gonzalez-Alvarado]" and was "insufficient to establish" government acquiescence. Yet Gonzalez-Alvarado presented just this type of particularized evidence in an expert report, which concluded that Gonzalez-Alvarado personally "would face a high risk of being tortured and killed by members of the CJNG" if he returned to Mexico because the CJNG "has a high capacity to confront armed forces of the state" and "[t]he Mexican government is overwhelmed." And Gonzalez-Alvarado stated that Jalisco "police officers . . . warned [his uncle] not to continue his investigation" into the disappearance of Gonzalez-Alvarado's cousin Francisco, who was also an informant. Before Francisco disappeared, Chuy's nephews and gang members expressed their intent to murder Francisco and Gonzalez-Alvarado "at the same time." The BIA did not discuss this evidence or explain why it was insufficiently particularized.

The BIA misconstrued the record in stating that Gonzalez-Alvarado testified that "he felt protected against any attempts by the CJNG when he ventured out into public areas with military presence." Rather, he stated that the military presence

5

merely "made it harder for the cartels to carry out their crimes with impunity." Gonzalez-Alvarado testified that in Tijuana he was receiving multiple "threats" on the phone each day from the CJNG and that the cartel had "many government people bought"—"local people, federal, all types of government." When he was in Tijuana, he escaped capture by the cartel by hiding. He "locked [him]self into a hotel" and later stayed at a relative's house and "didn't go out . . . all that time." He stayed in an area near the border where "there was [a] military presence" to prevent being kidnapped "on the streets," but the only time he testified to being on the streets was during his frequent moves to avoid capture.

(c) Gonzalez-Alvarado presented new evidence in his motion to reopen, including recent threats from Chuy and an explanation for the lack of threats while he was in federal prison, to support his argument that the CJNG remains interested in targeting him. Because the agency has not yet addressed this evidence and its decision is not otherwise supported on independent grounds, we remand to the BIA to consider the evidence. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

**PETITION GRANTED in part and DENIED in part; REMANDED.**

Costs on appeal are awarded to Gonzalez-Alvarado.