**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL AGONAFER,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
*Respondent*.

No. 13-73122

Agency No.
A091-681-612

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 16, 2017
San Francisco, California

Filed June 23, 2017

Before: William A. Fletcher and Richard C. Tallman,
Circuit Judges, and Paul C. Huck,* District Judge.

Opinion by Judge Huck

---

*United States District Judge for the U.S. District Court for the Southern District of Florida, sitting by designation.

# SUMMARY**

## Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of a motion to reopen removal proceedings for reconsideration of Daniel Agonafer's eligibility for relief under the Convention Against Torture in light of changed country conditions in Ethiopia.

The panel concluded that despite Agonafer's criminal conviction it had jurisdiction to review the petition for review under the exception to the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) for reviewing mixed questions of law and fact. The panel also concluded that it had jurisdiction because the Board's denial of the motion to reopen did not rely on Agonafer's conviction, but rather was a denial of his motion on the merits.

The panel held that the Board abused its discretion by disregarding or discrediting the undisputed new evidence submitted by Agonafer regarding increased violence toward homosexuals in Ethiopia, including reports of violence by both the government and private citizens.

The panel remanded for the Board to properly consider the changed country conditions evidence Agonafer submitted with his motion to reopen.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Morgan Russell (argued), Anne E. Peterson, and Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for Petitioner.

Dana M. Camilleri (argued); Anthony P. Nicastro, Senior Litigation Counsel; Ernesto H. Molina, Jr., Assistant Director; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

HUCK, District Judge:

This case concerns a petition for review of the Board of Immigration Appeals' ("BIA") denial of Daniel Agonafer's motion to reopen removal proceedings to apply for protection under the Convention Against Torture ("CAT"). The core of the underlying CAT claim is that Agonafer fears torture on account of his sexual orientation if he is removed to his home country of Ethiopia. Agonafer filed his motion to reopen over five years after the previous decision by the BIA in his case. The BIA denied his motion to reopen, finding that the motion did not fall within the exceptions to the 90-day time limitation within which the motion must be filed following the final removal order. The BIA also found that the new evidence submitted did not demonstrate changed country conditions in Ethiopia material to his claim for relief under the CAT.

We must decide whether we have jurisdiction over Agonafer's petition and, if so, whether the BIA abused its discretion in denying Agonafer's motion to reopen. First, we have jurisdiction pursuant to the exception to the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(C) for reviewing mixed questions of law and fact, as the petition here requires us to apply the law to undisputed facts. Second, the BIA abused its discretion by disregarding or discrediting the undisputed new evidence submitted by Agonafer regarding increased violence toward homosexuals in Ethiopia, including reports of violence by both the government and private citizens. Therefore, we grant Agonafer's petition for review.

## I. Background

Agonafer came to the United States as a student in 1980 and became a lawful permanent resident in 1990. After a series of convictions over the following decade, Agonafer was placed in removal proceedings in 2003 and charged with being inadmissible and removable as an alien convicted of a crime involving moral turpitude.[1] The Immigration Judge ("IJ") granted Agonafer a waiver of inadmissibility in 2005 under former Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996),[2] as well as

---

[1] Agonafer pleaded guilty in 1993 to sexual battery and lewd acts with a minor. His crimes of conviction are not relevant to this appeal because deferral of removal under the CAT "has no criminal conviction bar." *Owino v. Holder*, 575 F.3d 956, 958 (9th Cir. 2009) (citing 8 C.F.R. § 1208.17).

[2] Congress repealed INA § 212(c) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The repeal did not apply retroactively to aliens, such as Agonafer, who

withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The Department of Homeland Security ("DHS") appealed the IJ's decision, and the BIA vacated the decision in 2006. On remand, the IJ reopened the case and issued a written decision in June 2007, again granting relief under INA § 212(c) and § 241(b)(3), and additionally granting Agonafer's application for CAT protection. The DHS appealed the IJ's ruling and, in 2007, the BIA reversed the IJ again on all forms of relief.

We then dismissed in part and denied in part Agonafer's petition for review on February 6, 2012. *See Agonafer v. Holder*, 467 F. App'x 753 (9th Cir. 2012). Regarding Agonafer's claim for CAT relief, we stated:

> Finally, the evidence in the record does not compel the conclusion that Agonafer will more likely than not be tortured in Ethiopia. Although there is a potential for imprisonment as a result of homosexual activity, *there is no evidence in the record of any violence directed against homosexuals in Ethiopia, either inside or outside of the prison system*. Agonafer presented evidence illustrating instances of the mistreatment of political prisoners, but *none of the evidence established the required connection between prisoner mistreatment and homosexuals*.

*Id.* at 754–55 (emphasis added) (citation omitted).

---

pleaded guilty to crimes before the IIRIRA took effect. *INS v. St. Cyr*, 533 U.S. 289, 326 (2001).

On June 21, 2013, Agonafer filed an untimely motion to reopen with the BIA, claiming that changed country conditions in Ethiopia should excuse his untimely filing and allow him to reapply for deferral of removal under the CAT. Agonafer attached to the motion fifteen documents relating to the treatment of homosexual persons in Ethiopia from the period between 2007 and 2013. On August 8, 2013, the BIA denied his motion to reopen as untimely and found that Agonafer "has not demonstrated a change in country conditions material to his claim for relief, such that he is more likely than not to be tortured by or at the instigation of or with the consent or acquiescence of Ethiopian authorities." Rather, the BIA found that "[t]he evidence reflects ongoing and substantially similar treatment of homosexuals that existed at the time of the respondent's hearing" and noted that Agonafer has not "alleged receiving any specific threats."

## II. Jurisdiction

We have jurisdiction to determine our own jurisdiction. *Malilia v. Holder*, 632 F.3d 598, 601 (9th Cir. 2011). We also "have jurisdiction when an alien appeals from the [BIA]'s denial of a motion to reopen a removal proceeding." *Mata v. Lynch*, 135 S. Ct. 2150, 2154 (2015); *Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 920 (9th Cir. 2015); *see also* 8 U.S.C. § 1252(b)(6) ("[A]ny review sought of a motion to reopen or reconsider [a removal order] shall be consolidated with the review of the [underlying] order."). However, we lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" a crime involving moral turpitude. 8 U.S.C. § 1252(a)(2)(C); *see id.* § 1182(a)(2)(A)(i)(I); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc).

We have recognized two exceptions to that jurisdictional bar. We may review (1) questions of law or constitutional claims, and (2) a denial of CAT "relief on the merits, for failure to demonstrate the requisite factual grounds for relief, rather than in reliance on the conviction." *Pechenkov v. Holder*, 705 F.3d 444, 448 (9th Cir. 2012). Regarding the first exception, "we have jurisdiction to review the denial of . . . CAT relief when a petitioner raises questions of law, including mixed questions of law and fact, or constitutional claims." *Brezilien v. Holder*, 569 F.3d 403, 410 (9th Cir. 2009). "Mixed questions of law and fact refer to the application of law to undisputed facts." *Gasparyan v. Holder*, 707 F.3d 1130, 1134 (9th Cir. 2013) (internal quotation marks omitted). "[E]ven if our inquiry would entail reviewing an inherently factual dispute, appellate jurisdiction is preserved under 8 U.S.C. § 1252(a)(2)(D) so long as the relevant facts are undisputed." *Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007). Regarding the second exception, when the agency "does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the jurisdiction-stripping provisions—[including] § 1252(a)(2)(C)—apply to divest this court of jurisdiction." *Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007).

The facts pertaining to Agonafer's motion to reopen are undisputed. Our review of the BIA's denial of his motion to reopen is a mixed question of law and fact because we must apply the legal standard for prevailing on a motion to reopen based on changed country conditions to the established facts in the record. In *Ghahremani*, we held that we had jurisdiction to review the denial of a motion to reopen brought by an alien who had committed two crimes of moral turpitude and an aggravated felony. *See Ghahremani*, 498 F.3d at 998. In that case, the petitioner argued that

equitable tolling excused his untimely motion to reopen. *Id.* We held that jurisdiction was proper under 8 U.S.C. § 1252(a)(2)(D) because we were called upon to "apply the legal standard for equitable tolling to established facts." *Id.* at 999. Here, jurisdiction is likewise proper because we are called upon to apply the legal standard for prevailing on a motion to reopen based on changed country conditions to the established facts in this case.

We also have jurisdiction to review the petition because the BIA's denial of Agonafer's motion to reopen did not rely on his conviction of a crime involving moral turpitude. *See Morales*, 478 F.3d at 977. Rather, the BIA denied his motion on the merits by finding that he had "not demonstrated a change in country conditions material to his claim for relief, such that he is more likely than not to be tortured by or at the instigation of or with the consent or acquiescence of Ethiopian authorities." Having determined that we have jurisdiction, we next consider whether the BIA abused its discretion in denying Agonafer's motion to reopen.

### III. Standard of Review

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016). "The [BIA] has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). However, the BIA abuses its discretion when its denial is "arbitrary, irrational, or contrary to law." *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (quoting *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir. 1985)). In considering a motion to reopen, the BIA must accept as true the facts asserted by the petitioner, unless they are "inherently unbelievable." *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991). The BIA "must show proper consideration of all factors, both favorable and unfavorable,

in determining whether to grant a motion to reopen and must articulate its reasons for denying such a motion." *Bhasin v. Gonzales*, 423 F.3d 977, 983–84 (9th Cir. 2005) (citation omitted).

## IV. Discussion

### A.

An alien may generally file only one motion to reopen removal proceedings, and that motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A), (B). Generally, a motion to reopen must be filed within ninety days of the final administrative removal order. *Id.* § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, the ninety-day deadline and one-motion limit do not apply if the motion to reopen is based on changed country conditions. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). The changed country conditions exception likewise applies to motions to reopen to assert CAT claims. *See Go v. Holder*, 744 F.3d 604, 609 (9th Cir. 2014) ("[W]e hold that the procedural requirements specified in 8 C.F.R. § 1003.2(c) apply to CAT claims."). The exception applies "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

To prevail on a motion to reopen on the basis of changed country conditions, a petitioner must clear four hurdles. A petitioner must (1) produce evidence that conditions have changed in the country of removal; (2) demonstrate that the

evidence is material; (3) show that the evidence was not available and would not have been discovered or presented at the previous hearings; and (4) "demonstrate that the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought." *Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008) (internal quotation marks omitted). A motion to reopen "shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). "The critical question is not whether the allegations bear some connection to a prior application, but rather whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim" now does. *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004). The newly submitted evidence must be "qualitatively different" from the evidence presented at the previous hearing. *Id.* Evidence that simply recounts previous conditions presented at a previous hearing or that is voluminous but redundant is not sufficient to show a change in country conditions. *See Najmabadi v. Holder*, 597 F.3d 983, 989 (9th Cir. 2010).

In *Malty*, the petitioner "described only incidents of harassment and discrimination" against Christians in Egypt at his asylum hearing, which the IJ concluded "did not rise to the level of persecution." *Malty*, 381 F.3d at 944–45. Four years later, the petitioner filed a motion to reopen with the BIA in which he asserted changed circumstances in Egypt that had arisen following the IJ's decision, including "new evidence detailing rising levels of violence against Egyptian Coptic Christians generally and specific acts of violence against his family in particular." *Id.* at 944. The BIA concluded that he had merely presented a "continuance of the circumstances that gave rise to his first claim." *Id.* at 945 (internal quotation marks omitted). We granted review and

held that the BIA abused its discretion because the petitioner's "new evidence [was] qualitatively different from the evidence presented at his asylum hearing" four years earlier. *Id.* The "new, previously unavailable evidence indicat[ed] that the harassment had increased to the level of persecution, both with respect to Coptic Christians generally and with respect to [the petitioner's] family specifically." *Id.* at 945–46.

In *Bhasin*, the petitioner fled India following attacks against her and her family and the disappearance of several members of her family. *Bhasin*, 423 F.3d at 981. While the IJ at the asylum hearing found that Bhasin had established a "well-founded fear of persecution," the IJ nevertheless denied eligibility for asylum and withholding of removal because Bhasin had failed to show that the persecution was on account of one of the five enumerated grounds for such relief. *Id.* at 982. The BIA affirmed, concluding that "Bhasin had failed to establish persecution on account of membership in her family social group." *Id.* Bhasin then timely filed a motion to reopen her proceedings in order to present previously unavailable evidence regarding her "membership in a particular social group." *Id.* (internal quotation marks omitted). That evidence included a sworn declaration that her two daughters and her son-in-law received death threats and subsequently disappeared. *Id.* at 982–83. The BIA denied Bhasin's motion to reopen. *Id.* at 983. We granted her petition for review, holding that the BIA abused its discretion in refusing to reopen the proceedings based on "new evidence that if proved would have established prima facie eligibility for relief" for asylum or withholding of removal on account of her family social group. *Id.* at 987.

In *Najmabadi*, the petitioner applied for asylum seeking to prevent her removal to her home country of Iran.

*Najmabadi*, 597 F.3d at 985. The IJ concluded that "she had not established past persecution or a well-founded fear of future persecution." *Id.* Four years later, Najmabadi filed a petition to reopen her proceedings based on allegations that circumstances in Iran had changed, including the changed relationship between the United States and Iran following the September 11, 2001 attacks, as well as "generalized strife" inside Iran, such as attacks on activists and restrictions on women. *Id.* The BIA denied the petition, concluding that she failed to establish a level of change that was linked to her particular circumstances, that the new evidence that she submitted described only general conditions that affected the population at large, and that the new evidence demonstrated similar conditions to those presented at her original hearing. *Id.* at 985–86. We denied Najmabadi's petition for review, holding that the new evidence that she submitted with her petition to reopen lacked the "individualized relevancy" that we required in *Malty* and *Bhasin*. *Id.* at 989–90. We held that substantial evidence supported the BIA's conclusion that Najmabadi's evidence detailed conditions affecting the population at large, and that her new evidence simply recounted generalized conditions in Iran that failed to demonstrate that "her predicament [was] appreciably different from the dangers faced by her fellow citizens." *Id.* at 990 (quoting *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998)).

**B.**

Here, the government argues that the evidence that Agonafer submitted with his motion to reopen does not demonstrate that country conditions in Ethiopia have materially changed, but simply "reflects ongoing and substantially similar treatment of homosexuals that existed at the time of [his 2005] hearing." In support of this

contention, the government points to Agonafer's submission during his 2005 immigration proceedings of an online article from August 2002 on gay and lesbian affairs in Africa, in which an interviewee claimed to "know two gays who were executed by the government" in Ethiopia. The government further maintains that Agonafer has failed to present any evidence of "individualized relevancy," such as incidents of persecution of family members, as required by *Najmabadi*.

Agonafer argues that his new evidence shows a stark deterioration in conditions for homosexuals in Ethiopia since June 2007, the time of the IJ's written decision in his proceedings on remand. Agonafer highlights our holding in his prior appeal that "there is no evidence in the record of any violence directed against homosexuals in Ethiopia" and that "none of the evidence established the required connection between prisoner mistreatment and homosexuals." *Agonafer*, 467 F. App'x at 754–55. Agonafer also maintains that the government's arguments regarding evidence of "individualized relevancy" are legally flawed and not a basis on which the BIA relied.

With his motion to reopen, Agonafer submitted evidence that as of 2012, homosexuals in Ethiopia have been subject to increased persecution and violence. In particular contrast to Agonafer's evidence from 2007, Agonafer submitted an August 27, 2012 Summary of the Norwegian Organization for Asylum Seekers' Report on Ethiopia, which noted that "[m]embers of the Ethiopian lesbian, gay, bisexual and transgender (LGBT) community are consistently subjected to hate crimes and violence by both the government and private citizens," that "criminal cases are often fabricated against homosexuals," and that "[w]hile LGBTs are incarcerated, they are exposed to violence by the police, prison officers and fellow inmates." The report further noted

that "[t]here is very little transparency about mistreatment of homosexuals in Ethiopia, as attacks on homosexuals are rarely reported." Additionally, the 2012 United States Department of State's Country Report on Human Rights Practices for Ethiopia noted that "[t]here were some reports of violence against lesbian, gay, bisexual, and transgender (LGBT) individuals; reporting was limited due to fear of retribution, discrimination, or stigmatization." That report further found that "[t]here were periodic detainments of some in the LGBT community, combined with interrogation and alleged physical abuse." In contrast, the 2006 United States Department of State's Country Report on Human Rights Practices for Ethiopia had merely noted that "[w]hile society did not widely accept homosexuality, there were no reports of violence against homosexuals."

We conclude that the BIA abused its discretion because it clearly disregarded or failed to give credit to the post-2007 evidence submitted by Agonafer, which demonstrates that the country conditions regarding the treatment of homosexuals in Ethiopia are qualitatively different from the country conditions presented to the IJ in 2007. Whereas before, we noted that there was "no evidence in the record of any violence directed against homosexuals in Ethiopia," *Agonafer*, 467 F. App'x at 754, at least two of the reports submitted with Agonafer's motion to reopen provide reports of violence directed against homosexuals in Ethiopia since 2007, including violence in connection with imprisonment.

Additionally, we reject the government's contention that Agonafer must present categorically different evidence of "individual relevancy" from what he presented in his earlier proceedings. It is undisputed that Agonafer is a homosexual male. Given Agonafer's sexual orientation and the evidence of the treatment of homosexuals in Ethiopia, there is

sufficient evidence that, if proved, would establish his prima facie eligibility for deferral of removal under the CAT. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010) ("[A] CAT applicant may satisfy his burden with evidence of country conditions alone.").

The government's argument that Agonafer has failed to describe incidents of persecution of family members is irrelevant given that Agonafer's sole position before the BIA was that he will be subject to torture if removed to Ethiopia on account of his homosexuality—something independent of the treatment of any of his family members in Ethiopia. The evidence of violence against homosexuals, including imprisonment coupled with violence, together with Agonafer's undisputed homosexuality, satisfy the "individualized relevancy" required for a prima facie showing of eligibility for CAT deferral.

While the BIA "does not have to write an exegesis on every contention," it is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004) (internal quotation marks omitted). In denying Agonafer's motion to reopen, the BIA's conclusion that "[t]he evidence reflects ongoing and substantially similar treatment of homosexuals that existed at the time of the respondent's hearing" disregarded the newly submitted 2012 reports of recent persecution of and violence towards homosexuals in Ethiopia. Because the BIA failed to consider the issues raised by the new reports in a manner showing that it "heard and thought and not merely reacted" to Agonafer's motion to reopen, *Lopez*, 366 F.3d at 807 n.6, it "abused its discretion in dismissing the new evidence as demonstrating a mere continuance of the

previous circumstances." *Malty*, 381 F.3d at 946. Accordingly, the BIA's denial of Agonafer's motion to reopen was arbitrary, irrational, or contrary to law.

For the reasons discussed above, the petition for review is **GRANTED**, and the case is **REMANDED** to the BIA with instructions to consider properly the changed country conditions evidence that Agonafer submitted in his motion to reopen.