**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 15 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

XIAO LIN ZHU,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

Respondent.

No. 16-71226

Agency No. A098-215-527

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 9, 2018
Portland, Oregon

Before: WARDLAW and OWENS, Circuit Judges, and MÁRQUEZ,** District
Judge.

Xiao Lin Zhu, a native and citizen of China, petitions for review of the

Board of Immigration Appeals' (BIA) denial of her motion to reopen based on

changed country conditions. We have jurisdiction pursuant to 8 U.S.C. § 1252.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Rosemary Márquez, United States District Judge for
the District of Arizona, sitting by designation.

We grant the petition for review and remand to the BIA with instructions to reopen proceedings.

"We review denials of motions to reopen for abuse of discretion, and defer to the BIA's exercise of discretion unless it acted arbitrarily, irrationally, or contrary to law. We review the BIA's determination of purely legal questions de novo, and review its factual findings for substantial evidence." *Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010) (citations omitted).

When considering whether a petitioner has demonstrated changed country conditions, "'[t]he critical question is . . . whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim' now does." *Agonafer v. Sessions*, 859 F.3d 1198, 1204 (9th Cir. 2017) (quoting *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004)). The BIA determined that Zhu failed to demonstrate that conditions had changed sufficiently to warrant reopening her asylum application. This conclusion was an abuse of discretion.

Zhu submitted numerous United States government reports and local Chinese government documents demonstrating a material change in China's enforcement of its restrictive family-planning policies between 2004 and 2015. The documents show that in 2004, enforcement of the one-child policy was casual in Zhu's home province of Fujian. For instance, a 1998 State Department report found that the policy was enforced "loosely" in Fujian; that violators were "at

2

worst, given modest fines;" and that Fujian's "lax enforcement" was "criticized in the official press." According to the 2004 State Department report, U.S. Consulate General officials had seen "no evidence of forced abortion," with the exception of a single hospital administrator's vague reference to "'measures' (unspecified)."[1]

Indeed, the BIA itself has relied on many of these exact same documents to conclude that an asylum-seeker who had two children in the United States—the very situation faced by Zhu—did not have a well-founded fear of forced sterilization if returned to Fujian Province in 2007. *In re J-W-S-*, 24 I. & N. Dec. 185, 192–93 (B.I.A. 2007) (noting, in reaching this conclusion, that "[e]nforcement efforts in Fujian Province, in particular, have in the past been described as 'lax' or 'uneven' in published reports and court decisions"). We have done the same. *Feng Gui Lin v. Holder*, 588 F.3d 981, 988 (9th Cir. 2009) (relying on *J-W-S-* to conclude that an asylum-seeker had not demonstrated, in 2007, that coercive measures would be enforced on her in Fujian Province).

This lax enforcement stands in stark contrast to the situation depicted in the evidence beginning around 2009. For example, a 2009 report from the

---

[1] The BIA decision asserts that the 2004 report contains a reference to "remedial measures" taken in Fujian Province. This would be an important finding, because the evidence indicates that "remedial measures" (Chinese: "*bujiu cuoshi*") is a euphemism for "compulsory abortion." But the phrase "remedial measures" in fact does not appear in the 2004 State Department report excerpts submitted by Zhu. It appears for the first time in the 2005 report, issued eleven months *after* Zhu's scheduled removal hearing.

Congressional-Executive Committee on China (CECC) found that "[t]he use of coercive measures . . . remains commonplace," and that Fujian regulations permit "in practice . . . forced abortion and forced sterilization." The same report cites how "[l]ocal authorities continue to mandate surgical sterilization . . . as a means to enforce birth quotas," including a directive to local Fujian officials "to 'strictly act on the demand to carry out tubal ligation within one month' for women who give birth to a second or third child." A 2011 CECC document describes how "[n]umerous reports emerged this past year illustrating family planning officials' use from 2009 to 2011 of violence to coerce sterilizations, abortions, or payment of fines," including in Fujian. Other government reports from 2010 through 2014 tell much the same story.

Most critically, local Fujian government documents submitted by Zhu provide first-hand evidence of worsening conditions in and around her hometown of Chang Le. For example, Lianjing County family planning documents from 2010 announced a "Countywide Massive Family Planning Clean-up Work," and instructed officials to "[t]ake every measure possible to raise the materialization rate." A 2009 directive from Guantou Town mandated that villages "must fully complete the missions of required abortion, birth induction, sterilization, and collection of social maintenance fees," and threatened fines and public shaming for officials who failed to meet quotas. And 2009 Chang Le City documents declared

4

a "one-hundred-day campaign" to "focus on major remedial measures;" home visits by agency officials to "focus on cleaning up the delayed sterilization [and] [s]peed up the sterilization process;" and the formation of "village household cadres to prepare for an urgency effort on targets who have failed to carry out long-term contraceptive measures[.] . . . [T]he focus is to strictly fulfill any postponed sterilization duty."

The BIA cited some of this evidence, but only for the anodyne proposition that conditions "continued to vary by locality;" it nevertheless found that conditions in 2015 were a mere continuation of those in 2004. We fail to see how the BIA could have reached this conclusion other than by "disregarding or discrediting the undisputed new evidence" of stepped-up enforcement in Fujian— and in Chang Le City in particular—beginning around 2009. *Agonafer*, 859 F.3d at 1201. We therefore hold that the BIA abused its discretion by failing to meaningfully consider the evidence submitted by Zhu. *Id.* at 1206–07.

For the same reasons, we conclude that Zhu has provided sufficient evidence to demonstrate a "reasonable likelihood" of proving a well-founded fear of persecution. *See Malty*, 381 F.3d at 947–48. Accordingly, we grant Zhu's petition for review and remand to the BIA with instructions to reopen her asylum case.

**PETITION GRANTED; REMANDED WITH INSTRUCTIONS.**

5