**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOEL EMPLEO SILVA,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney
General,

*Respondent.*

Nos. 16-70130
17-73272

Agency No.
A045-476-155

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 16, 2020*
San Francisco, California

Filed July 10, 2020

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit
Judges, and Ivan L.R. Lemelle, District Judge.**

Opinion by Judge Ikuta;
Concurrence by Judge Berzon

---

* The panel unanimously concludes this case is suitable for decision
without oral argument, and the case is therefore submitted on the briefs as
of April 16, 2020. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Ivan L.R. Lemelle, United States District Judge for
the Eastern District of Louisiana, sitting by designation.

## SUMMARY[***]

### Immigration

Denying Joel Empleo Silva's petitions for review of decisions of the Board of Immigration Appeals, the panel concluded that Silva's conviction for petty theft under section 484(a) of the California Penal Code is a crime involving moral turpitude, and that the BIA did not abuse its discretion in denying Silva's motion to reopen to seek asylum and related relief based on changed country conditions in the Philippines.

Silva was convicted of violating section 484(a) of the California Penal Code in 1998, 2004, and 2007. Addressing the BIA's interpretation of crimes involving moral turpitude, the panel observed that, prior to 2016, the BIA had held that a theft offense did not categorically involve moral turpitude unless it involved a permanent taking, as distinguished from a temporary one. However, in *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), the BIA held that a theft offense may involve moral turpitude despite the fact that it does not require the accused to intend a literally permanent taking. This court subsequently held in *Garcia-Martinez v. Sessions*, 886 F.3d 1291 (9th Cir. 2018), that the BIA's new rule would not apply to persons who were convicted before November 16, 2016, the date on which the BIA issued *Matter of Diaz-Lizarraga*.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Addressing the elements of Silva's conviction, the panel observed that, in *People v. Davis*, 19 Cal. 4th 301 (1998), the California Supreme Court explained in dicta that section 484(a) includes the intent to deprive the owner permanently of possession of the property, but the word permanently should not be taken literally, and temporary takings could amount to theft in some circumstances. In *People v. Avery*, 27 Cal. 4th 49 (2002), the California Supreme Court definitively held that a person could be convicted under section 484(a) even if that person did not intend to effect a literally permanent taking of property.

The panel explained that, if it were writing on a clean slate, the categorical analysis would proceed as follows. Silva was convicted of violating section 484(a) in 1998, 2004, and 2007. According to *Garcia-Martinez*, at those times, the BIA's generic definition of a theft offense involving moral turpitude required the intent to permanently deprive the owner of the property. But by 1998, under *Davis*, it was questionable whether a violation of section 484(a) required that the offender intend a literally permanent deprivation of property, and by 2004, under *Avery*, it was clear that section 484(a) did not require such an intent. Therefore, at the time of at least two of Silva's offenses, section 484(a) criminalized more conduct than the BIA's generic theft offense involving moral turpitude, and so the state statute did not categorically define a crime involving moral turpitude. Thus, Silva would not be removable under 8 U.S.C. § 1227(a)(2)(A)(ii) because he was not convicted of two or more crimes involving moral turpitude.

However, the panel pointed out that it was not writing on a clean slate, and that both before and after *Avery*, this court held that section 484(a) was a crime involving moral

turpitude. The panel noted that *Garcia-Martinez* put those earlier opinions in question because they failed to analyze the potential distinction between the intent requirement in section 484(a) and the BIA's articulation of the intent required before *Matter of Diaz Lizarraga*. However, the panel concluded that it was nevertheless bound by circuit precedent. The panel explained that in this circuit, a three-judge panel must apply binding precedent even when it is clearly wrong because, for example, it failed to recognize an intervening change in the law. The panel noted that only an en banc court has the power to fix such errors. The panel further explained that a three-judge panel can reconsider the law of the circuit only when the relevant court of last resort has undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable, or when a three-judge panel must follow an agency construction entitled to deference under *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), neither of which apply here. The panel therefore held that Silva's three separate violations of section 484(a) constitute crimes involving moral turpitude.

Turning to Silva's motion to reopen, the panel held that the BIA did not abuse its discretion in denying Silva's motion to reopen because he failed to establish prima facie eligibility for asylum and related relief based on changed country conditions. Silva sought to reopen proceedings based on his history of drug use and his fear of persecution or torture under Philippine President Rodrigo Duterte's anti-drug program. The panel noted that Silva did not contend that he suffered past persecution, and merely speculated that someone in the Philippines could report his past drug use to the government, or that he might succumb to the temptation to begin using drugs again. Because Silva failed to submit

any specific evidence that such events might occur, the panel held that Silva failed to establish prima facie eligibility for relief.

Judge Berzon concurred in the majority opinion in full, but wrote separately to reiterate her view that the phrase "crime involving moral turpitude" is unconstitutionally vague.

## COUNSEL

Francisco Miguel Ugarte, Office of the Public Defender, San Francisco, California, for Petitioner.

Joseph H. Hunt, Assistant Attorney General; Song Park and Papu Sandhu, Acting Assistant Directors; Christina P. Greer, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

IKUTA, Circuit Judge:

Under our precedent, petty theft under section 484(a) of the California Penal Code is a crime involving moral turpitude. *See, e.g.*, *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009). Although we question whether this precedent was correctly decided, we have no authority to revisit it here. We also hold that the Board of Immigration Appeals (BIA) did not abuse its discretion in denying the petitioner's motion to reopen.

I

Joel Empleo Silva was admitted to the United States as a lawful permanent resident on June 27, 1996.    After admission, Silva was convicted of petty theft offenses under the California Penal Code on three separate occasions:  in 1998, he was convicted of petty theft in violation of sections 484(a) and 490.5,[1] and in 2004 and 2007, he was convicted of petty theft with a prior theft conviction in violation of sections 484(a) and 666.[2]    Silva was also convicted of attempted theft in violation of section 664 in 2000.

In May 2015, the Department of Homeland Security charged Silva as removable for having been "convicted of two or more crimes involving moral turpitude," 8 U.S.C.

---

[1] Section 484(a) states, in pertinent part, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . is guilty of theft."  Cal. Pen. Code § 484(a).  Section 484(a) encompasses both petty and grand theft; the elements of petty theft are the same as grand theft, apart from the amount or type of property taken. *See* Cal. Pen. Code §§ 487, 488; *United States v. Esparza-Ponce*, 193 F.3d 1133, 1137 (9th Cir. 1999).

Section 490.5 prescribes the punishment for a "first conviction for petty theft involving merchandise taken from a merchant's premises." Cal. Pen. Code § 490.5.  Silva was charged with stealing merchandise from a J. C. Penney department store.

[2] At all relevant times, section 666 allowed for heightened punishments of persons convicted of petty theft after having served time based on a prior petty theft conviction.  *See* Cal. Penal Code § 666 (effective Jan. 1, 2001 to Sep. 8, 2010).

§ 1227(a)(2)(A)(ii),[3] referencing Silva's three petty-theft offenses and his attempted-theft conviction. An immigration judge held that Silva was removable as charged.

In December 2015, the BIA dismissed Silva's appeal. It rejected Silva's argument that a violation of section 484(a) did not qualify as a crime involving moral turpitude because the Ninth Circuit had "repeatedly held that it is." The BIA expressed no opinion on Silva's argument that the phrase "crimes involving moral turpitude" was unconstitutionally vague, holding that it lacked jurisdiction to declare an act of Congress unconstitutional. Silva petitioned for review.

While the petition was pending, Silva moved to reopen proceedings in light of changed country conditions in the Philippines, for the purpose of applying for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In his motion, Silva made the following allegations. After Rodrigo Duterte was elected president of the Philippines, he instituted an anti-drug program that included an initiative called Oplan Tokhang—roughly translated as "knock and plead"—which focused on low-level sellers and users. Under Oplan Tokhang, police and local officials visited the houses of suspected drug sellers and users and demanded that they cooperate with the police. Suspects who did not cooperate, or who initially cooperated but then returned to using or selling, were reportedly killed.

---

[3] Section 1227(a)(2)(A)(ii) provides, "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii).

Silva also alleged that his history of drug use would put him at risk if he returned to the Philippines. In a declaration submitted with his motion to reopen, Silva testified that he had regularly used methamphetamine while in the United States from the late 1990s until 2015 and that he had used a cheap form of the drug called "shabu" daily with friends and neighbors when he returned to the Philippines for three months in early 2000. After being taken into immigration custody in May 2015, Silva stopped using drugs and has continued to abstain from drug use after his release, even though he had "been tempted many times by [a] friend." Despite abstaining from drugs, Silva claims that if he returns to the Philippines, the people who knew him when he was there in 2000 could "rat him out" to the police as a former drug user. Further, Silva believes that "it will be very hard for [him] to resist the temptation to start using shabu" in the Philippines.

The BIA denied Silva's motion to reopen. The BIA reasoned that Silva had not shown that Filipino authorities were aware or would become aware of his past drug use. Nor had Silva shown that he would use drugs in the Philippines. Therefore, the BIA held that Silva had not made out a prima facie case for asylum, withholding of removal, or CAT protection. Silva petitioned for review.

We consolidated Silva's two pending petitions for review. *See* 8 U.S.C. § 1252(b)(6). We have jurisdiction over both petitions based on 8 U.S.C. § 1252(a)(1). *See Mata v. Lynch*, 576 U.S. 143, 147 (2015).[4]

---

[4] Silva stated that the criminal-alien bar, 8 U.S.C. § 1252(a)(2)(C)—which limits our jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed" various

II

We first turn to Silva's petition for review of the BIA's December 2015 order of removal. On appeal, Silva argues that he is not removable for having been convicted "of two or more crimes involving moral turpitude," 8 U.S.C. § 1227(a)(2)(A)(ii), because a violation of section 484(a) of the California Penal Code does not involve moral turpitude.

To determine whether an alien's crime of conviction subjects the alien to removal under 8 U.S.C. § 1227(a)(2)(A)(ii), we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *Marmolejo-Campos v. Holder*, 558 F.3d 903, 912 (9th Cir. 2009) (en banc). That approach requires us to determine "whether the crime of conviction contains all the elements of the generic federal offense." *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1081 (9th Cir. 2008).[5]

A

In making this determination, we begin by defining the elements of the generic federal offense, *id.*, in this

---

criminal offenses, including certain crimes involving moral turpitude—applies here. It does not. Section 1252(a)(2)(C) applies to crimes involving moral turpitude "for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i)(II); *see* 8 U.S.C. § 1252(a)(2)(C). But Silva's petty-theft convictions were not crimes for which such a sentence may be imposed. *Rusz v. Ashcroft*, 376 F.3d 1182, 1185 (9th Cir. 2004).

[5] Neither party argues that we should apply the modified categorical approach here, *see, e.g.*, *Shepard v. United States*, 544 U.S. 13, 26 (2005), so we do not address that issue.

case, "crimes involving moral turpitude," 8 U.S.C.
§ 1227(a)(2)(A)(ii). We "defer to the BIA's articulation of
the generic federal definition 'if the statute is silent'" and "the
BIA's interpretation is 'based on a permissible construction
of the statute.'" *Renteria-Morales*, 551 F.3d at 1081 (quoting
*Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005)).
The BIA has defined the term "moral turpitude" as referring
to conduct that is "inherently base, vile, or depraved, and
contrary to the accepted rules of morality and the duties owed
between persons or to society in general." *Matter of Silva-
Trevino*, 26 I. & N. Dec. 826, 833 (BIA 2016) (citation
omitted). The BIA has further explained that "[t]o involve
moral turpitude, a crime requires two essential elements:
reprehensible conduct and a culpable mental state." *Id.* at 834
(citing *Nino v. Holder*, 690 F.3d 691, 695 (5th Cir. 2012)).
Although we have framed our definition of "moral turpitude"
in slightly different terms,[6] it "does not differ materially from
the [BIA's]." *Marmolejo-Campos*, 558 F.3d at 910 (citing
*Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1058 n.9 (9th
Cir. 2006)). These definitions, however, are not helpful for
our task of identifying the elements of a generic "crime
involving moral turpitude" for purposes of the categorical
approach, because they fail "to 'particularize' the term in any
meaningful way." *Id.*

Given the difficulty of determining the elements of
"crimes involving moral turpitude" as opposed to determining
the elements of a specific criminal offense, the BIA has
adopted a different approach. Because the phrase "crimes

---

[6] "[W]e have traditionally divided crimes involving moral turpitude
into two basic types: 'those involving fraud and those involving grave
acts of baseness or depravity.'" *Marmolejo-Campos*, 558 F.3d at 910
(quoting *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005)).

involving moral turpitude" refers to a category of crimes rather than a specific offense with identifiable elements, *cf.* 8 U.S.C. § 1101(a)(43), the BIA has sensibly moved from trying to define the phrase itself to instead giving examples of the types of offenses that qualify as "crimes involving moral turpitude," *see, e.g.*, *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 847 (BIA 2016).   We have deferred to this approach when articulated by the BIA in a published opinion. *Marmolejo-Campos*, 558 F.3d at 910–11.

Using this method of interpretation, the BIA had concluded that only certain theft offenses involve moral turpitude.  For purposes of the statutory section providing that the term "aggravated felony" means, among other things, "a theft offense (including receipt of stolen property)," 8 U.S.C. § 1101(a)(43)(G), the BIA has defined a generic "theft offense" as one that involves:  "[1] taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (quoting *Penuliar v. Gonzales*, 435 F.3d 961, 969 (9th Cir. 2006)).   For purposes of defining "crimes involving moral turpitude," however, the BIA's cases from the 1940s indicated that only theft offenses which "by their nature necessarily constitute theft or stealing as those offenses are known at common law" would qualify, *Matter of D-*, 1 I. & N. Dec. 143, 145 (BIA 1941), meaning that a theft offense did not categorically involve moral turpitude unless it "involve[d] a permanent taking as distinguished from a temporary one," *Matter of H-*, 2 I. & N. Dec. 864, 865 (BIA 1947); *accord Matter of P-*, 2 I. & N. Dec. 887, 887 (BIA 1947).   At common law, however, there were certain situations where persons were found guilty of larceny despite

not having intended a *literally* permanent deprivation of property, *see People v. Davis*, 19 Cal. 4th 301, 308–15 (1998) (collecting cases), and the BIA had not conclusively resolved whether certain theft offenses could involve moral turpitude even when a person did not intend a literally permanent deprivation of property, *see Matter of Jurado-Delgado*, 24 I. & N. Dec. 29, 33 (BIA 2006) ("We need not decide whether the premise of the respondent's argument is correct, i.e., that if the offense required only an intent to temporarily deprive the owner of the use or benefit of the property taken, the crime would not be one of moral turpitude.").

Against this backdrop, the BIA reexamined the elements of a theft offense involving moral turpitude in *Matter of Diaz-Lizarraga*. In doing so, the BIA explained that its "purpose in adopting the 'intent to permanently deprive' requirement was to distinguish between substantial and reprehensible deprivations of an owner's property on the one hand and, on the other, mere de minimis takings in which the owner's property rights are compromised little, if at all." *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. at 850. Since its early decisions, the BIA observed, criminal law had evolved, and most jurisdictions had abandoned the "traditional dichotomy of permanent versus temporary takings." *Id.* at 851. Accordingly, the BIA updated its jurisprudence to reflect the majority of states and the Model Penal Code, and held that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 853. Under this definition, a theft offense may involve moral turpitude "despite the fact that it does not require the accused to intend a literally permanent taking." *Id.* at 852 (emphasis omitted). Further, the BIA stated that "to the extent that any of our

prior decisions have required a literal intent to permanently deprive in order for a theft offense to be a crime involving moral turpitude, those decisions are overruled." *Id.* at 855.

We subsequently held that the BIA's decision to "abandon the literally-permanent deprivation test" constituted an abrupt change in law that would impose "a new and severe burden" if applied to persons who were convicted while the "old rule was extant." *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1295–96 (9th Cir. 2018). Accordingly, we held that the BIA's new rule would not apply to persons who were convicted before November 16, 2016, the date on which the BIA issued its decision in *Matter of Diaz-Lizarraga*. *Id.* at 1296. In short, under *Garcia-Martinez*, the elements of a generic theft offense involving moral turpitude for convictions before November 16, 2016 are: (1) the taking of property or an exercise of control over property (2) without consent and (3) with the intent of causing a permanent deprivation of the property. *See id.* But for convictions after November 16, 2016, the third element becomes: "[with the] intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. at 852–53.

B

Having identified the BIA's interpretation of a generic theft offense involving moral turpitude, we turn to the second step of the categorical approach, identifying the elements of the specific crime of conviction. *See Renteria-Morales*, 551 F.3d at 1081. To determine the elements of a state statute, "we may consider the interpretation of the statute

provided by state courts." *United States v. Perez*, 932 F.3d 782, 785 (9th Cir. 2019).

Section 484(a) of the California Penal Code provides, in pertinent part, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . is guilty of theft." Cal. Pen. Code § 484(a). In 1993, a California appellate court held that "[a] person who intends only to temporarily deprive an owner of property, albeit while acquiring or depriving the owner of the main value of the property, does not intend to permanently deprive the owner of the property and therefore does not have the intent to commit theft, as that crime is defined under California law." *People v. Marquez*, 16 Cal. App. 4th 115, 123 (1993) (emphasis omitted).

The California Supreme Court subsequently cast doubt on this statement of law. *See Davis*, 19 Cal. 4th at 318. In *Davis*, the California Supreme Court explained in dicta that section 484(a) includes the intent to "deprive the owner permanently of possession of the property," but "[t]he word 'permanently,' as used here is not to be taken literally," *id.* at 307 (citation omitted), and temporary takings could amount to theft in some circumstances, *id.* at 307 & n.4. In support of this, *Davis* explained that section 484(a) "is declaratory of the common law," *id.* at 304 n.1, and cited cases where defendants were convicted of larceny even though they did not intend a literally permanent deprivation, *id.* at 308–15. An appellate court subsequently applied *Davis*'s dicta and held that "an intent by one to do less than retain property permanently will constitute theft when the owner's property was dealt with in such a way that there was a substantial risk of permanent loss." *People v. Zangari*, 89 Cal. App. 4th 1436, 1447 (2001).

Finally, the California Supreme Court resolved the disagreement between *Marquez* and *Zangari*, and adopted the dicta in *Davis.  See People v. Avery*, 27 Cal. 4th 49, 55 (2002).  *Avery* held that for purposes of section 484(a), "the intent to deprive the owner of property only temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment, satisf[ies] the California requirement of intent to deprive the owner of the property permanently."  *Id.* at 54–55.  As in *Davis*, the California Supreme Court explained that this was the intent required to commit larceny at common law.  *Id.* at 58.  In short, a person could be convicted under section 484(a) even if that person did not intend to effect a literally permanent taking of property.  *Id*. at 55.

C

Under the categorical approach, the next step is to determine "whether the elements of the alien's state statute of conviction criminalize more conduct than, or the same conduct as, the elements of a generic federal offense."  *Diego v. Sessions*, 857 F.3d 1005, 1009 (9th Cir. 2017).  If the elements of the specific crime of conviction criminalize the same or less conduct than the generic offense, the specific crime of conviction categorically qualifies as a crime involving moral turpitude.  *See id.*

If we were writing on a clean slate, the third step would proceed as follows.  Silva was convicted of violating section 484(a) of the California Penal Code in 1998, 2004, and 2007. According to *Garcia-Martinez*, at those times, the BIA's generic definition of a theft offense involving moral turpitude consisted of the following elements:  (1) the taking of property or an exercise of control over property (2) without

consent and (3) with the intent to permanently deprive the owner of the property. *See* 886 F.3d at 1296. But by 1998 it was questionable whether a violation of section 484(a) required that the offender intend a literally permanent deprivation of property, *see Davis*, 19 Cal 4th at 307, and by 2004, it was clear that section 484(a) did not require such an intent, *see Avery*, 27 Cal. 4th at 55. Therefore, at the time of at least two of Silva's offenses, section 484(a) criminalized more conduct than the BIA's generic theft offense involving moral turpitude, and so the state statute did not categorically define a crime involving moral turpitude. *See Garcia-Martinez*, 886 F.3d at 1296.[7] Under this analysis, Silva would not be removable under 8 U.S.C. § 1227(a)(2)(A)(ii) because he was not convicted "of two or more crimes involving moral turpitude."

## D

We are not, however, writing on a clean slate. Before *Avery* was decided, we held that a conviction under section 484(a) for petty theft qualified as a crime involving moral turpitude. *See United States v. Esparza-Ponce* 193 F.3d 1133, 1136 (9th Cir. 1999). We reached this conclusion without delving into the question whether the intent requirement in section 484(a) criminalized more conduct than the BIA's definition of the intent requirement for a theft

---

[7] The outcome may be different today given that the BIA's current interpretation of a theft offense involving moral turpitude does not require an intent to effect a literally permanent taking. *See Matter of Diaz-Lizarraga*, 26 I. & N. Dec. at 852–53 (holding that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded," which does not require "a literally permanent taking" (emphasis omitted)).

offense involving moral turpitude. After *Avery* ruled that section 484(a) does not require an intent to effect a literally permanent deprivation, 27 Cal. 4th at 55, we continued to rely on *Esparza-Ponce*, *see Castillo-Cruz*, 581 F.3d at 1159; *Flores Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008) (per curiam). In *Flores Juarez*, decided six years after *Avery*, the petitioner was "convicted of three separate petty theft offenses in violation of California Penal Code §§ 484 and 488." 530 F.3d at 1022. Without mentioning *Avery*, we relied on *Esparza-Ponce* to conclude that "[p]etty theft is a crime involving moral turpitude." *Id*. And in *Castillo-Cruz*, decided seven years after *Avery*, we stated that petty theft in violation of section 484(a) was a crime involving moral turpitude because it required "the specific intent to deprive the victim of his property permanently." 581 F.3d at 1160 (citation omitted).

*Garcia-Martinez* puts our conclusions in *Esparza-Ponce*, *Flores Juarez*, and *Castillo-Cruz* in question, because these opinions failed to analyze the potential distinction between the intent requirement in section 484(a) and the BIA's articulation of the intent required for a theft offense involving moral turpitude before *Matter of Diaz Lizarraga*. But we are nevertheless bound by our precedent. "[T]he first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). In our circuit, a three-judge panel must apply binding precedent even when it is clearly wrong because (for example) it failed to recognize an intervening change in the law. *See United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc) (holding that a three-judge panel lacked authority to overrule decisions that failed to recognize an intervening amendment to a sentencing guideline). Only

an en banc court has the power to fix these errors. *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1189 (9th Cir. 2011). A three-judge panel can reconsider the law of the circuit only when "the relevant court of last resort" has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc), or when a three-judge panel must follow an agency construction entitled to *Chevron* deference rather than a prior judicial interpretation of an ambiguous statute, *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Because *Avery* predates *Castillo-Cruz* and *Flores Juarez*, there is no "intervening decision on controlling state law by a state court of last resort," *Gammie*, 335 F.3d at 893, and we are "bound to reach the same result" as our precedent, *Massanari*, 266 F.3d at 1170. We therefore conclude that Silva's three separate violations of section 484(a) constitute crimes involving moral turpitude. *See, e.g.*, *Castillo-Cruz*, 581 F.3d at 1159. Accordingly, the BIA did not err in relying on our binding precedent to conclude that Silva was removable on the ground that he was "convicted of two or more crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii).[8]

---

[8] Silva's argument that the phrase "crimes involving moral turpitude" is unconstitutionally vague is foreclosed by our recent opinion in *Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 251–52 (9th Cir. 2018), *cert. denied sub nom. Martinez-de Ryan v. Barr*, 140 S. Ct. 134 (2019). Although Silva purports to raise a new argument regarding why the phrase is void for vagueness, we are bound by prior circuit law even when a new litigant raises arguments that are "characterized differently or more persuasively." *United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013).

## III

We next turn to the BIA's denial of Silva's motion to reopen. Although Silva did not seek relief from removal at his initial hearing, an alien may move to reopen proceedings for the purpose of submitting new applications for relief. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(1). We review the denial of a motion to reopen for an abuse of discretion and reverse only if the BIA's decision was "arbitrary, irrational, or contrary to law." *Valeriano v. Gonzales*, 474 F.3d 669, 672 (9th Cir. 2007) (citation omitted).

Where, as here, the motion to reopen is based on changed circumstances in the country to which removal has been ordered, the movant must: (1) produce evidence that conditions have changed in the country of removal, (2) demonstrate that the evidence is material, (3) show that the evidence was not available and would not have been discovered or presented at the previous hearing, and (4) demonstrate that the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought. *See* 8 U.S.C. 1229a(c)(7)(ii); 8 C.F.R. § 1003.2(c)(1); *Agonafer v. Sessions*, 859 F.3d 1198, 1204 (9th Cir. 2017).[9]

---

[9] Section 1229a(c)(7) provides, "There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 1158 [asylum] or 1231(b)(3) [withholding of removal] of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(ii) (footnote omitted). The regulations governing such

Here, the BIA denied the motion to reopen on the ground that Silva had not established the fourth prong: that the new evidence would establish a prima facie case for the relief sought. Therefore, our review is limited to that ground. *See Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000). To establish a prima facie case, the movant must adduce evidence that, along with the facts already in the record, "will support the desired finding if evidence to the contrary is disregarded." *Maroufi v. INS*, 772 F.2d 597, 599 (9th Cir. 1985); *see also Sakhavat v. INS*, 796 F.2d 1201, 1204 (9th Cir. 1986) (stating that, at the motion-to-reopen stage, the BIA must determine whether the movant's affidavits "on their face cumulatively establish a clear probability" that he is entitled to the relief sought). The BIA may not make credibility determinations on motions to reopen, *Yang v. Lynch*, 822 F.3d 504, 509 (9th Cir. 2016), and "must accept as true the facts asserted by the [movant], unless they are 'inherently unbelievable,'" *Agonafer*, 859 F.3d at 1203 (quoting *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991)).[10] Nevertheless, "[c]ourts have recognized that a prima facie case of the clear probability of persecution cannot be established from speculative conclusions or vague assertions." *Maroufi*, 772 F.2d at 599; *see also Nagoulko v. INS*, 333 F.3d 1012, 1018 (9th Cir. 2003) (holding that an alien's fear of a hostile political party regaining power in her country is "too speculative to be credited as a basis for fear of

---

motions appear at 8 C.F.R. § 1003.2. We have held that these regulations also apply to claims under the Convention Against Torture. *Go v. Holder*, 744 F.3d 604, 609 (9th Cir. 2014).

[10] "[W]here some of the evidence is developed at a hearing, the [BIA] is of course free to interpret that evidence free from inferences in favor of the moving party." *Limsico*, 951 F.2d at 213 (citation omitted).

future persecution" absent "specific evidence" suggesting that such an event will occur). Therefore, "[a]ffidavits submitted in support of motions to reopen deportation proceedings must contain specific facts in order to carry the burden of establishing a clear probability of persecution." *Maroufi*, 772 F.2d at 600.

We turn to the question whether Silva established a prima facie case for asylum or withholding of removal. Silva does not contend that he suffered past persecution in the Philippines, so to qualify for asylum he must demonstrate "a well-founded fear of future persecution" in the Philippines, 8 C.F.R. § 1208.13(b), "on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42). In the absence of past persecution, an applicant must prove both a subjective fear of future persecution, 8 C.F.R. § 1208.13(b)(2)(i)(A), and an objectively "reasonable possibility" of future persecution, 8 C.F.R. § 1208.13(b)(2)(i)(B). "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Limsico*, 951 F.2d at 212 (citation omitted). "Speculation on what could occur is not enough to establish a reasonable fear." *Bartolome v. Sessions*, 904 F.3d 803, 814 (9th Cir. 2018).

Section 1231(b)(3) provides for withholding of removal. 8 U.S.C. § 1231(b)(3). To qualify for this form of relief, the applicant must demonstrate that it is "more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to [the country in question]." 8 C.F.R. § 1208.16(b)(2). The "more likely than not" standard for withholding of removal is "more stringent"

than the "reasonable possibility" standard for asylum, and therefore an applicant who is unable to show a "reasonable possibility" of future persecution "necessarily fails to satisfy the more stringent standard for withholding of removal." *Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004); *accord Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1029 (9th Cir. 2019).

Here, the BIA did not abuse its discretion in concluding that Silva failed to establish a prima facie case for asylum or withholding of removal. In his declaration, Silva speculated that someone in the Philippines could report his past drug use to the government, or that he might succumb to the temptation to begin using drugs again. Silva did not, however, submit any "specific evidence" that such events might occur, and these possibilities are "too speculative to be credited as a basis for fear of future persecution." *Nagoulko*, 333 F.3d at 1018. Accordingly, the BIA did not abuse its discretion in concluding that Silva failed to establish a prima facie case for asylum. Therefore, he also "necessarily fail[ed] to satisfy the more stringent standard for withholding of removal." *Mansour*, 390 F.3d at 673.

We next turn to the question whether Silva established a prima facie case for protection under the Convention Against Torture (CAT). To qualify for CAT protection, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to [the country in question]." 8 C.F.R. § 1208.16(c)(2); *accord Duran-Rodriguez*, 918 F.3d at 1029.

It was neither arbitrary nor irrational for the BIA to conclude that Silva's speculations in his motion to reopen and declaration were insufficient to show "that it is more likely

than not that he would be tortured if removed to [the Philippines]." *Duran-Rodriguez*, 918 F.3d at 1029 (citing 8 C.F.R. § 1208.16(c)(2)); *see Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (holding that generalized evidence of crime in Mexico was insufficient to establish prima facie eligibility for CAT protection). Therefore, the BIA did not abuse its discretion in concluding that Silva failed to establish a prima facie case for CAT protection.

**PETITIONS DENIED**.

---

BERZON, Circuit Judge, concurring:

I concur in the majority opinion in full. I write separately to reiterate yet again my view that the phrase "crime involving moral turpitude" is unconstitutionally vague. *See Barbosa v. Barr*, 926 F.3d 1053, 1060–61 (9th Cir. 2019) (Berzon, J., concurring); *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1121 (9th Cir. 2020) (Berzon, J., concurring). The majority opinion provides yet another example of our "failed enterprise" to consistently determine whether a crime involves moral turpitude when there is no "coherent criteria" as to what that phrase encompasses. *Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1258–61 (9th Cir. 2019) (Fletcher, J., concurring). As "persistent efforts" have failed "to establish a standard" of what a "crime involving moral turpitude" is, it is time to revisit whether this phrase is unconstitutionally vague. *See Johnson v. United States*, —U.S.—, 135 S. Ct. 2551, 2558 (2015) (internal citation and quotation marks omitted).